Argued and submitted August 1, reversed and remanded December 14, 2005

## Ann M. EDWARDS,
### *Respondent,*

*v.*

## Jonathon Scott BIEHLER,
### *Appellant.*

## CCV99-09295; A125456

124 P3d 1256

Mark Kramer argued the cause for appellant. With him on the brief was Kramer & Associates.

No appearance for respondent.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

SCHUMAN, P. J.

---

* Landau, J., *vice* Richardson, S. J.

## SCHUMAN, P. J.

Biehler, the respondent below,[1] appeals from a judgment denying his motion to terminate a stalking protective order (SPO) of unlimited duration. He contends primarily that the trial court erred in concluding that "[t]here are no statutory provisions for modifying or vacating permanent stalking orders." He further argues that, if the trial court correctly interpreted the stalking statutes and an unlimited duration SPO cannot, in fact, be terminated, then the statutes violate a variety of state and federal constitutional guarantees. Because we agree with respondent's primary argument and hold that an SPO of unlimited duration can be terminated, we reverse and remand without reaching the constitutional arguments.

The relevant facts are not in dispute. In 1999, when respondent was 18 years old, his 15-year-old girlfriend broke off a relationship with him. He subsequently continued to contact her inappropriately until her mother filed a stalking complaint against him. That complaint resulted in, first, a temporary SPO, and then, after a hearing, a stalking order for an unlimited term. The order prevented respondent from, among other things, intentionally, knowingly, or recklessly "[c]oming into the visual or physical presence of" his former girlfriend.

Five years elapsed, during which respondent did not violate any of the SPO's terms, completed anger management counseling, and, in the words of the trial court, "obtained an Associate Degree in Criminal Justice" in order to pursue "a career in law enforcement." He then moved to "vacate"[2] the SPO. As indicated above, the trial court denied the motion on the ground that no statute authorized it to vacate an SPO. This appeal ensued.

---

[1] In stalking cases, we refer to the parties by their status in the trial court. Thus, although Biehler is the appellant before us, we refer to him as "respondent." *See Hanzo v. deParrie*, 152 Or App 525, 527 n 1, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999).

[2] The stalking statutes use the word "terminate" to describe the entry of an order that relieves the respondent of continuing prospective application of an SPO. We understand respondent's motion to "vacate" as a motion to "terminate."

A brief overview of the stalking statutes, ORS 163.730 to 163.755, puts the issue in context.[3] The statutory scheme establishes a sequence of procedures and inquiries that can culminate in the entry of a temporary SPO or an SPO of unlimited duration.[4] The process begins when a complainant files with a law enforcement officer or agency a "Stalking Complaint," ORS 163.744, describing the unwanted contact. If an officer has probable cause to believe that (1) the respondent has engaged "intentionally, knowingly or recklessly" in "repeated and unwanted contact" with the complainant or a member of his or her family or household, (2) so as to alarm or coerce him or her under an objective reasonableness standard, and (3) the contact reasonably causes the complainant to feel apprehension regarding the complainant's safety or the safety of his or her family or household, then the officer issues a citation ordering the respondent to show cause why the court should not enter an SPO. ORS 163.735. At the show cause hearing, the court may enter a "temporary stalking protective order pending further proceedings." ORS 163.738(2)(a)(A). However, when and if the court determines that a preponderance of the evidence establishes the facts on which the citation was issued, it may enter a "court's stalking protective order." ORS 163.738(2)(a)(B). The latter type of order must specify the conduct from which the respondent is enjoined, and the order is "of unlimited duration unless limited by law." ORS 163.738(2)(b).

The statute does not define the phrase "limited by law." However, ORS 163.741 provides a procedure for the "termination" of "a stalking protective order":

"(1) Whenever a stalking protective order, *as authorized by ORS 163.735 or 163.738*, is issued and the person to be restrained has actual notice thereof, the person serving the order shall deliver forthwith to the county sheriff a true copy * * * [for entry] into the Law Enforcement Data System maintained by the Department of State Police and into

---

[3] We do not deal in this case with a "civil" stalking action under ORS 30.866.

[4] Although the phrase "permanent stalking protective order" appears on some trial courts' check-the-box order forms, the term "permanent" does not appear in any stalking statute and, for that reason (and because it begs the issue in this case), we do not use it.

the databases of the National Crime Information Center of the United States Department of Justice.

"* * * * *

"(3)   When a stalking protective order *described in subsection (1) of this section is terminated by order of the court,* the clerk of the court shall deliver forthwith a true copy of the termination order to the county sheriff with whom the original order was filed. Upon receipt of the termination order, the county sheriff shall promptly remove the original order from the Law Enforcement Data System and the databases of the National Crime Information Center of the United States Department of Justice."

(Emphasis added.) As the italicized language demonstrates, the court has authority under ORS 163.741 to terminate "a stalking protective order as authorized by * * * ORS 163.738." That statute, in turn, authorizes two kinds of SPOs. One is explicitly called a "temporary stalking protective order," ORS 163.738(2)(a)(A), and the other is called "a stalking protective order" with no temporal modifier, ORS 163.738(2)(a)(B). Although the text of ORS 163.741 leaves some doubt as to whether a *temporary* SPO can be terminated—a counterintuitive possibility that we need not address here—the court unambiguously has authority to terminate an order that is designated simply a "stalking protective order." The provision in ORS 163.738(2)(b) declaring that an SPO is "of unlimited duration unless limited by law" does not contradict our conclusion. The "law" that might limit the duration is the court order described in ORS 163.741.

Nor does the legislative history of ORS 163.741 cast doubt on the terminability of unlimited term SPOs. The statute originated in the 1999 legislative session as Senate Bill (SB) 318. In the course of the Senate Judiciary Committee's hearings on the bill, Senator Bryant, the chair, asked Dale Penn, a witness representing the Oregon District Attorneys, "Is there a method under the law to remove a stalking order?" and Penn replied: "Mr. Chair, there isn't a specific procedure for that. I have seen courts allow orders to be withdrawn and perhaps just under the power of the court to relitigate or to look at changed circumstances." Tape Recording, Senate Judiciary Committee, SB 318, Feb 10, 1999, Tape 33, Side B. Another witness, representing the Governor's Council on

Domestic Violence, informed the committee that, if an SPO were deemed to be absolutely permanent without the possibility of termination, it would raise serious constitutional objections. *Id.* (statement of Maureen McKnight). Thus, important witnesses alerted the committee to the existence of potential constitutional problems if the orders were considered permanent and noted that some courts treated them as though they were *not* permanent.

Further, McKnight told the House Judiciary Committee that one of the purposes of SB 318 was to bring the stalking statutes into alignment with "[e]quivalent removal provisions when a restraining order is terminated." Testimony, House Judiciary Committee, SB 318, May 12, 1999, Ex A (statement of Maureen McKnight). Presumably, the witness was referring to the restraining order that an abused family member can obtain under the Family Abuse and Prevention Act (FAPA), ORS 107.700 to 107.732. Such an order expires automatically after one year at most but can be terminated "by court order," ORS 107.720(2)(a), even "before the expiration date," ORS 107.720(3). Thus, although the legislative history contains no clear and unambiguous conclusion regarding the terminability of unlimited duration SPOs, it does support that inference.

Under ORS 163.741(3), then, a court may terminate an SPO. However, the statute does not set explicit criteria or procedures for such a termination. Other parts of the stalking statutes and related statutes, *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), assist us in discerning the legislature's intended standard that, if met, allows the court to "limit[ ] by law" the duration of an SPO.

FAPA, as noted above, is related to stalking statutes in that both are directed at similar harms and address those harms through entry of orders—SPOs in the case of stalking and restraining orders in the case of FAPA—requiring the respondent to, among other things, avoid contact with the petitioner. FAPA permits a court to issue a restraining order against domestic abusers when the victim has been abused

and is in imminent danger of further abuse by the respondent. ORS 107.710 - 107.718. As we noted above, the restraining order is effective for one year at most; if vacated, superseded, or modified, it terminates sooner. ORS 107.718(1). After a year, the order may be continued only if the court finds that "a person in the petitioner's situation would reasonably fear further acts of abuse by the respondent" based on (at minimum) "a sworn ex parte petition alleging facts supporting the required finding"; the respondent may request a hearing to contest the renewal. ORS 107.725.

Thus, in the FAPA context, a judge may terminate a renewed FAPA order upon a respondent's showing that the petitioner lacks a reasonable fear of future abuse. The legislative requirement that the court must find that the petitioner lacks reasonable fear of future abuse is, practically speaking, a requirement that the court find that the reasons for entering the FAPA in the first place—recent abuse or imminent danger of further abuse—have ceased to exist and the petitioner no longer has reason to fear the respondent.

In contrast, an SPO of unlimited duration does not terminate automatically after one year; instead, under ORS 163.741(3), it is of unlimited duration unless the court terminates it. However, based on the analogous nature of FAPA; on the fact that FAPA procedures have logical application for terminating orders in the stalking context; and on the legislative history recounted above, we conclude that the legislature intended that the criteria for terminating unlimited duration SPOs be comparable to the criteria for removing FAPA restraining orders. Thus, an SPO may be terminated when, on the respondent's motion, a court finds that the criteria for issuing the order under ORS 163.738(2)(a)(B)(i) to (iii) are no longer present. The court's inquiry will focus primarily on whether petitioner continues to suffer "reasonable apprehension" due to the past acts of the respondent under ORS 163.738(2)(a)(B)(iii).[5]

---

[5] Presumably, the elements in ORS 163.738(2)(a)(B)(i) and (ii), repeated and unwanted contact that results in objectively reasonable coercion or alarm, will be absent if the respondent has complied with the order prior to seeking termination; if not, the petitioner is subject to criminal prosecution for the violation.

Because the trial court did not have the opportunity to engage in that inquiry, we reverse and remand so that it might.

Reversed and remanded.