Argued and submitted August 6, 2009, judgment affirmed; supplemental judgment
reversed September 15, 2010

Brian OLSON,
*Plaintiff-Appellant,*

*v.*

Jarrod HOWARD,
*Defendant-Respondent,*

*and*

Jerry HOWARD,
individually and in his capacity as
Successor Trustee of the Resser Family Trust
Dated January 19, 1994;
Richard Redinger; Debra Miller; Kelly Resser;
Jayson Resser; and Patricia Olson,
*Defendants.*

Polk County Circuit Court
04P1894; A135496

239 P3d 510

Lee C. Nusich argued the cause for appellant. With him on the briefs was Lane Powell PC.

Norman R. Hill argued the cause for respondent. With him on the brief was Martinis & Hill.

Before Wollheim, Presiding Judge, and Haselton, Judge, and Sercombe, Judge.*

SERCOMBE, J.

_____
* Haselton, J., *vice* Edmonds, P. J.

## SERCOMBE, J.

Plaintiff, the beneficiary of a trust, filed a declaratory judgment action against defendant, a purchaser of real property held in the trust. Plaintiff sought a declaration that defendant did not possess any right, title, or interest in the property sold to him by the trustee; plaintiff also asked for equitable relief to unwind the transaction. The trustee and other trust beneficiaries were named parties to the case. On motions by trustee, the trial court struck portions of plaintiff's first and second amended complaints pertaining to the trustee's conduct. After plaintiff refused to plead further, the court entered a judgment dismissing the case. Plaintiff appeals that judgment. Plaintiff also appeals a supplemental judgment awarding attorney fees to defendant. We affirm the judgment of dismissal and reverse the supplemental judgment awarding attorney fees.

Plaintiff contends that the court erred in dismissing the case because his pleadings sufficiently stated a claim for relief. The allegations of the first and second amended complaints stated the following facts. Plaintiff's grandfather, Resser, owned rural property that was improved with a dwelling. Resser established a family trust for the benefit of plaintiff and others, including Jerry Howard (Howard). Resser made himself the trustee of the trust and transferred the property to the trust. Resser later appointed Howard as successor trustee of the trust; the trust provided that Howard would become the trustee on Resser's death, resignation, or a finding of his incompetence.

Howard, purporting to act as successor trustee, sold the property to defendant for $55,000. Defendant is Howard's son, Jarrod Howard. Defendant borrowed $55,000 from his father and mother in order to purchase the property. Plaintiff alleged that, at the time of sale, the fair market value of the property was at least $122,760. At that time, Resser had not resigned as trustee and had not been declared incompetent. Resser died a few weeks later.

Over seven years after that sale and the distribution of the trust proceeds to plaintiff and others, plaintiff brought a declaratory judgment action against defendant, Howard,

and the other trust beneficiaries. ORS 28.010 - 28.160 (Uniform Declaratory Judgments Act).[1] The amended complaint further alleged that the property sale to defendant was an "unlawful" and "sham" transaction by Howard and "for grossly inadequate consideration." Plaintiff pleaded that he did not seek "affirmative relief" from Howard, although the prayer of the amended complaint asked for return of the property to the trust, a resale of the land, and distribution of the proceeds of that sale to the trust beneficiaries. Plaintiff alleged that defendant was not entitled to any return of his purchase price for the property, but if restitution to defendant was made, that the doubled or trebled value of timber cut from the property by defendant should be offset from that restitution under statutes providing for multiplied damages for a successful timber trespass claim. *See* ORS 105.810; ORS 105.815.[2]

Howard, in a single motion, moved to strike all allegations from plaintiff's amended complaint that pertained to him, or, alternatively, to make the amended complaint more definite and certain regarding what relief was sought against him. *See* ORCP 21 E (motion to strike); ORCP 21 D (motion to make more definite and certain). The court granted that motion and gave plaintiff leave to replead. The court's letter ruling also specified, "While, as plaintiff claims, it may be

---

[1] ORS 28.040, in particular, provides:

"Any person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestuique trust, in the administration of a trust, or of the estate of a decedent, ward or insolvent, may have a declaration of rights or legal relations in respect thereto:

"* * * * *

"(3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

[2] Paragraph 3 of the prayer in the amended complaint provided:

"[I]n the event Jarrod Howard is able to prove to the court that, in equity and good conscience, he is entitled to a return of any of the amount of the $55,000 which he 'paid' for the Resser home place, that the said amount, minus any just and equitable setoffs, including any setoffs which incorporate the double and treble damage provisions of ORS 105.815 and ORS 105.810 respectively, be paid over to Jarrod Howard after the sale of the Resser home place and before the distribution of the remaining sale proceeds to the other beneficiaries who may be entitled to them[.]"

possible to pursue the action in the form of a declaratory judgment, the provisions of ORS 128.115 are necessarily implicated."[3]

Plaintiff's second amended complaint reframed the allegations against Howard. It alleged that Howard acted "unlawfully" and "essentially sold the Resser home place to himself for grossly inadequate consideration with [defendant] knowingly and willingly acting as a 'strawman.' " The allegations against Howard and defendant were intertwined in many respects. Howard's alleged actions (the sale of the property without authority, a loan of the purchase price to defendant, the sale to himself for "grossly inadequate consideration" through a "strawman," and a share of timber sale proceeds from the property) formed the basis for plaintiff's claim against defendant for a constructive trust.

Plaintiff's second amended complaint, however, stated that "[n]o affirmative relief is sought as to [Howard]" or the other trust beneficiaries. It asked for a declaration that defendant has no interest in the property and holds the property "in constructive trust for the benefit of the * * * [t]rust," and that defendant was not entitled to be repaid the purchase price. The prayer requested sale of the property and distribution of the resulting proceedings to the trust beneficiaries, and offsets to any repayment of the purchase price.

In response to the second amended complaint, Howard again moved to strike the allegations of his misconduct or to make the claim against him more definite and certain, arguing that "all allegations of misconduct by [Howard] should be stricken" or Howard should be "dismissed from the case." At the hearing on the motions, the court ruled, "I'm ordering that the complaint be stricken pursuant to your motion to strike and then you could plead further." In its

---

[3] At that time, *former* ORS 128.115 to 128.185 (2003), *repealed by* Or Laws 2005, ch 348, § 128, set out procedures to obtain relief against a trustee with respect to administration, settlement, or distribution of a trust estate. *Former* ORS 128.155 required a trust beneficiary seeking relief to file a letter of credit or undertaking "to the effect that the beneficiary will pay all costs, disbursements and reasonable attorney fees that may be ordered against the beneficiary in the proceeding." *Former* ORS 128.175 provided that "[t]he remedies provided by ORS 128.135 and 128.145 are cumulative and do not limit or abrogate any inherent power of a court with jurisdiction to grant equitable remedies * * *."

written order, after noting that "the relief Plaintiff seeks implicates the provisions of ORS 128.115 [to 128.185] because Plaintiff is challenging the administration of the trust and seeking relief directing the administration of the trust," relief that "requires a bond to be posted," the court directed that "Howard's Motion to Strike, and Motion to Make More Definite and Certain is hereby granted. Plaintiff shall have leave to replead." Plaintiff did not file a new complaint. Plaintiff later filed a notice dismissing without prejudice any claims under *former* ORS 128.115 to 128.155 (2003), *repealed by* Oregon Laws 2005, chapter 348, section 128, against Howard.

After several months, defendant filed a motion for entry of judgment and a motion to dismiss, arguing that there was no longer any operative complaint and, alternatively, that the court had lost subject matter jurisdiction when plaintiff dismissed Howard, because Howard was a necessary party to claims about the trust and its distribution. The trial court granted the motions and entered a judgment dismissing plaintiff's claims against defendant. The court explained, "I told plaintiff several times here that this can't proceed as they proposed. So whether [defendant's] motion is deemed a motion to dismiss, [or] a motion for judgment on the pleadings, * * * I'm going to grant it." The court later awarded attorney fees to defendant.

On appeal, plaintiff argues that his pleadings stated a claim for relief and that the trial court erred in dismissing the case. Plaintiff points to the court's denial of defendant's original motion to dismiss, in which the court ruled that plaintiff's pleadings at that time stated a claim for declaratory relief. Plaintiff argues that his second amended complaint, substantially the same as his earlier pleading, likewise states a claim for relief against defendant. Defendant, in contrast, argues that, because plaintiff did not file a third amended complaint after the trial court granted Howard's motion to strike or make more definite and certain, there was no complaint in effect and therefore plaintiff had no claim for relief to pursue.

We conclude that the effect of the court's order striking portions of the second amended complaint was to require

plaintiff to file another complaint and that the failure to do so allowed a judgment in defendant's favor. We begin with the applicable rules of civil procedure. ORCP 25 A pertains to the effect of proceeding after allowance of a motion to strike and provides:

> "When a motion to dismiss or a motion to strike an entire pleading or a motion for a judgment on the pleadings under Rule 21 is allowed, the court may, upon such terms as may be proper, allow the party to amend the pleading. In all cases *where part of a pleading is ordered stricken*, the pleading *shall be amended* in accordance with Rule 23 D. By amending a pleading pursuant to this section, the party amending such pleading shall not be deemed thereby to have waived the right to challenge the correctness of the court's ruling."

(Emphases added.) When the court grants a motion striking part of a pleading, a party *must* amend the pleading following the procedures set out in ORCP 23. ORCP 23 D, in turn, requires that, when a pleading is amended before trial, "it shall be done by filing a new pleading, to be called the amended pleading, or by interlineation, deletion, or otherwise. Such amended pleading shall be complete in itself, without reference to the original or any preceding amended one." Thus, if the trial court struck any part of plaintiff's second amended complaint, plaintiff was required to file a new pleading that was complete on its face, or modify the pleading by interlineation, deletion, or otherwise. Plaintiff did not do anything to file a new pleading despite the court's leave to do so. The court's order did not approve any interlineation or identify specific deletions from the pleading. The issue becomes, then, whether the trial court's order granting Howard's motion to strike or make more definite and certain struck part of plaintiff's second amended complaint. We conclude that it did.

The record demonstrates that the trial court granted the motion to strike portions of plaintiff's second amended complaint. Howard moved, *in the alternative,* asking the court to strike plaintiff's allegations related to him *or* to order plaintiff to make his pleading more definite and certain by explaining his claim for relief against Howard. The trial court simply granted the motion. Although the written order does

not explicitly specify whether it struck portions of plaintiff's second amended complaint, the record shows that some of the second amended complaint was stricken. Again, at the hearing on Howard's motion, the trial court stated, "I'm ordering that the complaint be stricken pursuant to your motion to strike and then you could plead further." The order on the motions gave plaintiff "leave to replead" as opposed to directing specific changes to the second amended complaint. Later, at the hearing where it discussed plaintiff's notice of dismissal of claims against Howard, the trial court addressed whether it had previously struck part of plaintiff's second amended complaint, stating:

> "[I]f I'm not mis-remembering the pleadings there's no complaint filed. The Court struck the allegations against Jerry Howard [and] there has never been a further amendment filed again so I'm not sure what we're—I have no clue where we are in terms of the pleading."

Thus, the court struck parts of the second amended complaint and required that any further pleading adequately state a claim against Howard. Those parts so stricken (the allegations pertaining to Howard's actions) were relevant to the constructive trust claim against defendant. The court's order invited repleading as opposed to interlineating the second amended complaint or excising specifically identified parts of that pleading. Plaintiff chose to not file a third amended complaint. Accordingly, when defendant moved for dismissal, plaintiff had no functioning complaint. The trial court did not err in concluding that plaintiff could not prevail as a matter of law without a complaint.

Plaintiff remonstrates, nevertheless, that the allowance of the motion to dismiss was erroneous because (plaintiff asserts) the court's allowance of the prior motion to strike was erroneous. However, plaintiff forfeited any ability to challenge any error with respect to the allowance of the motion to strike by failing to replead as required under ORCP 25 A after that earlier ruling. Oregon's Rules of Civil Procedure do not countenance any interlocutory appeal of the allowance of a motion to strike *part* of a pleading. Rather, under ORCP 25 A, a plaintiff has an obligation to move the case forward by "amend[ing] in accordance with Rule 23 D"—

an obligation that is independent of the merits of the motion to strike; indeed, the rule specifically provides that a plaintiff who amends the complaint as required "shall not be deemed thereby to have waived the right to challenge the correctness of the court's ruling" on the motion to strike. ORCP 25 A. Here, however, plaintiff did not amend his pleading as required by the rule and, having failed to do so, cannot now undo the court's later—and, by that point, correct—judgment dismissing the case for lack of a complaint.

What remains is plaintiff's appeal from the supplemental judgment allowing attorney fees. Plaintiff assigns error to the trial court's award of attorney fees, arguing that (1) defendant waived his claim for fees by failing to timely submit proposed special findings of fact, (2) the court erred in allowing fees under ORS 20.105(1),[4] and (3) the court erred in allowing fees pursuant to ORS 105.810(2).[5] We reject, without further discussion, plaintiff's contention that the timing of defendant's submission of proposed findings of fact and conclusions of law to the court for adoption under ORCP 68 C(4)(e) affected the court's authority to adopt those findings and conclusions. Nothing in ORCP 68 supports that contention.

■ ■    Whether a statute authorizes attorney fees is reviewed as a question of law. *Lovejoy Specialty Hospital v. Advocates for Life*, 121 Or App 160, 167, 855 P2d 159, *rev den,* 318 Or 97 (1993), *cert den,* 511 US 1070 (1994). More specifically, we review a trial court's determination that a party has "no objectively reasonable basis" for asserting a claim, for purposes of an award for attorney fees under ORS 20.105(1), for its legal correctness. *Secor Investments, LLC v. Anderegg,*

---

[4] ORS 20.105(1) requires an award of attorney fees in a civil action

"to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim, defense or ground for appeal."

[5] ORS 105.810(2) allows a court "in its discretion" to award attorney fees and the "reasonable costs of litigation" to a "prevailing party" under ORS 105.810(1). ORS 105.810(1), in turn, provides for a "timber trespass" claim, stated as one brought "against the person committing such trespasses" where "judgment is given for the plaintiff * * * for treble the amount of damages claimed, or assessed for the trespass."

188 Or App 154, 175, 71 P3d 538, *rev den,* 336 Or 146 (2003) (determination of whether plaintiff's claims were not "objectively reasonable" is a "matter of law").

An evidentiary record was created and a hearing was held on defendant's petition for an award of attorney fees and costs under ORS 20.105(1) and ORS 105.810. Based on that record, the trial court entered findings of fact and conclusions of law, which included the following:

> "It was decided that [Redinger, Resser's attorney-in-fact] should arrange for the sale of Resser's property.
>
> "* * * * *
>
> "[Defendant] agreed to purchase the property for $55,000.00 cash. * * *
>
> "Prior to closing, the title company discovered that Jerry Howard was named as a successor trustee under the Resser Family Trust. Jerry Howard had no knowledge that he was trustee until the title company contacted him prior to closing. On June 2, 1997, Jerry Howard completed the transaction by executing a deed at the direction of the title company, conveying the property to his son, [defendant]."

The trial court's findings went on to detail the particulars of a boundary dispute case between defendant and a neighbor. In that litigation, the court rejected the neighbor's affirmative defense that defendant did not own the property because Howard did not have the authority to transfer it to him. The trial court also made findings with respect to earlier litigation by a trust beneficiary that made the same claims as those advanced by plaintiff. That case was brought by plaintiff's mother, Patricia Olson:

> "Patricia Olson filed her own lawsuit in Polk County Case No. 00P1108. In that case, she claimed that [Jerry] Howard had improperly sold the property to his son. Specifically, she claimed that Jerry Howard had no authority under the terms of the trust to convey the property when he did. She also claimed that the property was sold for grossly insufficient value. That claim was dismissed. Judge Horner found that Mrs. Olson's complaint was frivolous and filed in bad faith. The trust was awarded attorney fees and costs. The award of attorney fees and costs in that case was upheld by the Court of Appeals * * *."

The trial court also made findings regarding the procedural history of plaintiff's case, as follows:

"Plaintiff initially filed the present action in Federal Court * * * [and] sued only [defendant]. The Federal Court dismissed plaintiff's claim for failure to join a necessary party, namely the trust and other trust beneficiaries. Because the other trust beneficiaries are also Oregon residents, the Federal Court lacked diversity jurisdiction and dismissed the case. Plaintiff responded by filing the present action in Polk County. In that action, Plaintiff alleged that Jerry Howard had no authority to act on behalf of the Resser Family Trust * * *. Plaintiff further alleged that Jerry Howard, without any legal authority, * * * act[ed] as successor trustee. * * * According to Plaintiff, the sale was a sham transaction. Plaintiff claims it was for grossly inadequate consideration * * *. Plaintiff originally claimed that the property was currently worth at least $175,000.00.

"Plaintiff asked the Court to declare that Jarrod Howard had no right, title or interest in the property and that he held the property only as a constructive trust for the benefit of the Resser Family Trust. Plaintiff sought an order of the Court requiring title to the property to be transferred back to the Resser Family Trust, and that the trust sell the property to a bona fide purchaser for fair market value. Plaintiff further claimed that Jarrod Howard was not entitled to a return of any of the [purchase price of the property]. * * * Plaintiff had no funds with which to repay the purchase price in the event the trust was required to repay Jarrod Howard."

The trial court ultimately concluded that plaintiff's complaint "was not objectively reasonable" under ORS 20.105 because the court agreed with defendant that the sale of the property occurred between Redinger and defendant, the sale was for "reasonably sufficient value," and because plaintiff "presented no evidence or argument to suggest that the transaction between Redinger and [defendant] was anything other than arms length and appropriate." The trial court also determined that, because plaintiff "sought a setoff against amounts that Defendant would have otherwise received in this restitution action for timber trespass[,]" and because "claims of timber trespass inextricably intertwine

with the underlying claim," defendant therefore was entitled to fees under ORS 105.810(2).

■ We conclude, as a preliminary matter, that defendant is not entitled to fees under ORS 105.810(2). That statute provides for payment of the "reasonable costs of litigation," including attorney fees, to a prevailing party under ORS 105.810(1). ORS 105.810(1) provides for a timber trespass claim, stated as one brought "against the person committing such trespasses" where "judgment is given for the plaintiff * * * for treble the amount of damages claimed, or assessed for the trespass" in certain circumstances. ORS 105.815(1) allows for "judgment [to be] given for double damages" in other circumstances. Defendant did not "prevail" in defending such a claim for damages. As pleaded, plaintiff's contingent request for an equitable offset from any return of defendant's purchase price was not a timber trespass claim within the purview of ORS 105.810(2). The trial court erred in determining that ORS 105.810(2) allowed an award of attorney fees to defendant.

■ Plaintiff's remaining argument is that, as a matter of law, fees were not authorized by ORS 20.105(1), because plaintiff's claim had an objectively reasonable basis and was supported by fact and law. Plaintiff first notes that the following facts are undisputed: Howard is defendant's father; Howard executed the deed conveying the trust property to defendant at a time when Howard had no authority to do so; the $55,000 consideration for the purchase was below the $122,760 tax assessed value of the property; and Howard financed defendant's purchase of the property. Plaintiff posits that Howard engaged in self-dealing. Plaintiff argues that

> "[i]t is true that [defendant] has an *explanation* as to why all of these facts add up to nothing and why the sale of the property was on the level and was for fair market value. However, any reasonable person would look at these facts and conclude that there is an *objectively reasonable* basis to believe that the sale should be set aside."

(Emphasis in original.)

Defendant counters that the evidentiary record of the attorney fees hearing undercuts plaintiff's claim of self-dealing in a number of ways. Defendant argues that

plaintiff's allegation that Howard sold the property to defendant is baseless because the evidence shows that the transaction actually was negotiated and agreed on between Redinger, who was Resser's attorney-in-fact, and defendant. According to defendant, Howard's execution of the deed was a formality that was demanded by the title company. Defendant also argues that appraisals in the record establish that the property was sold for its fair market value and that plaintiff's evidence of its established real market value for purposes of property tax assessment was immaterial as a matter of law. Finally, defendant argues that the evidence proves that plaintiff accepted proceeds from the sale of the property as a trust beneficiary and signed a release relinquishing any and all claims against the trustee or the trust and, therefore, that he waived the claim that he brought. The trial court found plaintiff's claim not to be "objectively reasonable" for each of those reasons.

■    We are required to affirm the trial court's determination of no "objectively reasonable" basis for plaintiff's claim if it is supported by any of those alternative bases. For example, in *Benaman v. Andrews*, 213 Or App 467, 478, 162 P3d 280 (2007), we noted that there were two possible bases for the court's award of fees and reversed only after concluding that both bases failed to meet the standard of showing that plaintiff's claims had no objectively reasonable basis.[6] However, no matter what the route to the ultimate destination, we conclude that none of those factual conclusions establishes, as a matter of law, that plaintiff's claims were not objectively reasonable under ORS 20.105(1). The trial court

---

[6] In *Benaman*, this court stated:

"It is possible that the trial court awarded fees because, as it found in its rulings from the bench, respondent filed her motions because she was personally motivated by a desire to retaliate against respondent. The controlling standard under ORS 20.105, is whether there was 'no objectively reasonable basis for asserting the claim.' Thus, respondent's personal motivation for seeking relief is not relevant. The trial court may also have based its ruling on its conclusion that there is *no statutory authority for termination of a permanent SPO*. In light of our holding in *Edwards* [*v. Biehler*, 203 Or App 271, 124 P3d 1256 (2005)], that a person subject to a SPO may seek to terminate it when the criteria for issuing the order are no longer present, it was not objectively unreasonable for respondent to seek to terminate the SPO after she had moved away from the West Linn house."

213 Or App at 478-79.

weighed the parties' competing evidence and determined, because it found the facts as urged by defendant, that plaintiff's case had no reasonable basis. The issue, however, is more narrow: whether there is evidence in the record to support plaintiff's claim. A "party has no objectively reasonable basis for asserting a claim only if the party's position is 'entirely devoid of legal or factual support at the time it was made.' *Mattiza* [*v. Foster*, 311 Or 1, 8, 803 P2d 723 (1990)] (footnote omitted)." *Dimeo v. Gesik*, 195 Or App 362, 371, 98 P3d 397 (2004), *modified on recons*, 197 Or App 560, 106 P3d 697 (2005) (footnote omitted).

■ "Whether a party has an objectively reasonable basis for asserting a claim is a function of the substantive law governing the claim." *Id*. at 369. Plaintiff's declaratory judgment claim sought restitution from defendant by imposition of a constructive trust. *See* ORS 28.080 (allowing supplemental relief in declaratory judgment proceedings). That equitable remedy is available " 'where money or property identified as belonging in good conscience to the plaintiff could be traced to particular funds or property in the defendant's possession.' " *Liberty Northwest Ins. Corp. v. Kemp*, 192 Or App 181, 197, 85 P3d 871, *rev den*, 337 Or 34 (2004) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 US 204, 213, 122 S Ct 708, 151 L Ed 2d 635 (2002)). That relief lies where a person holds trust funds or property that has been misappropriated. Plaintiff alleged that defendant possessed property that should belong to the trust because the property was transferred without authority, by a self-interested party, and without sufficient consideration. There was factual evidence to support those contentions.[7] The trial court erred in concluding that those contentions were entirely devoid of factual and legal support.

---

[7] Defendant claims that appraisal evidence in the record establishes that the property was sold for its fair market value. Defendant argues that plaintiff's allegations that the property did not sell for fair market value were based solely on the property's tax assessed value, and assessed value is not relevant to establish fair market value under *State Highway Commission v. Anderegg*, 241 Or 31, 33, 403 P2d 717 (1965) (observing that "the great weight of authority holds that assessed value is not competent direct evidence of value for purposes other than taxation"). Plaintiff responds that, under *Anderegg*, there is an exception to that general rule where the owner has participated in the tax assessment by requesting reappraisal to establish the proper valuation for assessment purposes. *See id.* Defendant requested reappraisal by Polk County in 1998, relatively close in time to the sale transaction, and so the tax assessed value should be admissible to prove fair

Finally, plaintiff signed a release as a trust benefici-ary relinquishing any and all claims against the trustee or the trust. The release, by its terms, provided:

> "[Plaintiff] hereby relinquishes any and all claims against the above-entitled Trust and the Trustee thereof, and the [plaintiff] promises to protect and otherwise indem-nify and hold harmless the Trustee from any liability for making the distribution herein described. The [plaintiff] acknowledges and accepts responsibility for any tax or other liabilities for the Trust which may be imposed in the future to the extent required by law."

The release was for claims against the trust or the trustee, not claims against other persons, including defendant. We are not persuaded that the release makes plaintiff's claim against defendant objectively unreasonable. We thus con-clude that the trial court erred in allowing attorney fees under ORS 20.105(1), because plaintiff's claim was not devoid of any factual or legal basis.

Judgment affirmed; supplemental judgment reversed.

---

market value. The trial court's lengthy findings and conclusions do not address the *Anderegg* issue or conclude that $55,000 was in fact fair market value for the prop-erty; we cannot conclude that plaintiff's claim that the property was sold for less than fair market value was devoid of any factual or legal support on this record.