Argued and submitted September 16, 1987, affirmed September 14, reconsideration denied November 10, petition for review denied December 20, 1988 (307 Or 246)

## STRAIGHT GRAIN BUILDERS,
*Respondent,*

*v.*

## TRACK N' TRAIL,
*Appellant.*

(85-2896; CA A41907)

760 P2d 1350

J. Michael Alexander, Salem, argued the cause for appellant. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Paul J. De Muniz, Salem, argued the cause for respondent. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff, an Oregon contractor, brought this action against defendant, a California shoe retailer, for money allegedly owed for plaintiff's construction in California of certain retail outlets for defendant. Defendant raised the affirmative defense of plaintiff's lack of a California builder's license, an infirmity which, under California law, would bar plaintiff from bringing an action against defendant in California courts. The trial court ruled that Oregon law, which does not prevent this action, applies and entered judgment in plaintiff's favor. Defendant's only assignment of error is that the trial court should have applied California law and dismissed plaintiff's complaint.

Plaintiff's first association with defendant was in 1983, when plaintiff submitted a bid to prepare a space in a Salem shopping mall to house defendant's store. Defendant awarded the job to plaintiff, which completed it in the fall, 1983. Defendant's president, Suechting, came to Salem for the opening of the store, met with plaintiff's principal partner, Levak, and expressed satisfaction with the project. That meeting was the only occasion on which the parties met face to face in Oregon. In 1984, plaintiff built two more stores for defendant, one in Tigard and one in Eugene,[1] and did extensive work on a store in Alaska.

By that time, the parties had a good working relationship, and defendant wanted plaintiff to construct four stores for it in 1985, three in California and one in Washington. Because the parties had dealt successfully with one another in the past without plaintiff's submitting written bids, there were no written bids or written contracts for the work. Levak went to California twice to meet with Suechting and to visit the store sites. Although there was no written contract, the trial court found that the parties entered into an "implied-in-fact" contract in California. Much of the material for the projects originated in Oregon and was fabricated at plaintiff's shop in Salem. Plaintiff hired a Salem architect to prepare plans for one of the California stores that required a design

---

[1] All of the stores that plaintiff prepared for defendant were located in shopping malls. The type of work performed depended on the size of the space, the physical requirements of the mall and the services provided to individual retailers by the mall.

different from that usually employed by defendant. Plaintiff sent a work crew to California to do part of the work, although California contractors also performed portions of the work.

After plaintiff completed the projects, defendant stopped paying, claiming that the costs had exceeded the parties' original estimate. Plaintiff brought this action to collect approximately $66,000. The trial court found that plaintiff had been paid for its work on the Washington store and that defendant owed $60,212.71 for the work done in California and entered judgment for plaintiff in that amount.

California law[2] prohibits an unlicensed contractor from bringing or maintaining an action in the courts of that state. Although Oregon law imposes a similar restriction on residential builders,[3] it does not as to commercial builders. The parties agree that, if Oregon law applies, plaintiff may maintain this action, but that it may not if California law controls. Because the California Supreme Court has held that a contract entered into in violation of that state's contractor registration law is "illegal and void," *Loving & Evans v. Blick,* 33 Cal 2d 603, 204 P2d 23 (1949),[4] California law is substan-

---

[2] California law provides:

"No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract * * *." West's Ann Bus & Prof Code § 7031.

A commercial builder is a "contractor" under the statute. Section 7026.

[3] ORS 701.065 provides:

"(1) A builder may not file a lien, file a claim with the Builders Board or bring or maintain in any court of this state a suit or action for compensation for the performance of any work on a residential structure or for the breach of any contract for work on a residential structure which is subject to this chapter, unless the builder was:

"(a) Registered under this chapter at the time the builder bid or entered into the contract for performance of the work; and

"(b) Registered continuously while performing the work for which compensation is sought.

"(2) A court may choose not to apply this section if the court finds that to do so would result in a substantial injustice to the unregistered builder."

[4] However, an owner who voluntarily pays the unregistered contractor may not recover the amount paid. *Comet Theatre Enterprises v. Cartwright,* 195 F2d 80 (9th Cir 1952).

tive. If it were procedural, the question would be governed by the law of the forum, and there would be no choice of law problem.

Before *Lilienthal v. Kaufman,* 239 Or 1, 395 P2d 543 (1964), the choice of law in contract cases was relatively straightforward: the law of the place of contracting—*lex loci contractus*—determined the validity of the contract. *Jamieson v. Potts,* 55 Or 292, 105 P 93 (1909). In *Lilienthal,* the court expressed doubt that that principle was valid "if the *only* connection of the state whose law would govern is that it was the place of making." 239 Or at 7. (Emphasis in original.) There, the contract was made in California between the defendant and a California resident and was to be performed there. Yet the court held that Oregon law controlled, because it adopted an approach that involved consideration of: (1) which state had the most significant relationship to the parties and the transaction;[5] (2) the rule of validation, and (3) a determination of whether the interests of Oregon (its "public policy") are so basic and important that we should not apply California law, despite its significant connection with the transaction and despite the fact that California law would have allowed enforcement of the contract. The court stated:

> "We have, then, two jurisdictions, each with several close connections with the transaction, and each with a substantial interest, which will be served or thwarted, depending upon which law is applied. The interests of neither jurisdiction are clearly more important than those of the other. We are of the opinion that in such a case the public policy of Oregon should prevail and the law of Oregon should be applied; we should apply that choice-of-law rule which will 'advance the policies or interests of' Oregon." 239 Or at 16.

The question in *Lilienthal* was whether a contract entered into in California by an Oregon resident to be performed in California was governed by the law of California, under which it was valid, or the law of Oregon, under which it was voidable. Given the approach adopted by the court, the question could have been answered either way. The Supreme Court has adopted the same analysis in tort cases, *Casey v.*

---

[5] *See Fisher v. Huck,* 50 Or App 635, 624 P2d 177, *appeal dism'd by stipulation* 291 Or 566, 632 P2d 1260 (1981), for a critique of that analysis in resolving choice of law problems in tort actions.

*Mason Constr. Co.,* 247 Or 274, 428 P2d 898 (1967), and we were critical of that approach in *Fisher v. Huck, supra,* n 5, in which we stated:

> "Prior to *Casey v. Mason Constr. Co.,* 247 Or 274, 428 P2d 898 (1967), the law of the place where the tort occurred controlled. *Casey* adopted the 'most significant relationships' approach of the Restatement (Second) Conflict of Laws. Since then, the choice of law has been based upon somewhat amorphous considerations, the evaluation of which depends in large measure on the semantics used by the court making the particular decision. * * *

> "When any court embarks on a determination of the 'relevant policies of other interested states and the relative interests of those states in the determination of the particular issue' (Restatement, *supra,* n 2, § 6), the endeavor, in many instances, is like skeet shooting with a bow and arrow: a direct hit is likely to be a rarity, if not pure luck. With that chance of success in mind, we nock the arrow and draw the string." 50 Or App at 638. (Footnote omitted.)

With the same trepidation, we analyze the factors in this case. Plaintiff is an Oregon partnership, and defendant is a California corporation. The parties entered into a contract in California. The stores were built in California, although much of the material used in the construction came from Oregon and much of the labor was performed here. One of the stores was designed by an Oregon architect, who is also licensed in California. The parties' relationship originated in Oregon, where plaintiff's first work for defendant was performed, and they met once in Oregon and twice in California prior to the agreement to do the work involved here. In sum, the states have roughly equal contacts with the parties and the transaction.

Over and above the Oregon contacts, this state has a substantial interest in the enforcement of contracts that would be valid if entered into and performed in Oregon and to which its citizens are parties. It also has an interest in seeing that its citizens receive just compensation for their labor and materials. California's primary interest, as expressed by its statute, is to encourage all builders to obtain a license by denying access to its courts to those who do not. The licensing scheme protects consumers from dishonesty and incompetence, neither of which is claimed here.

Applying the *Lilienthal* rationale that, when Oregon has an important fundamental interest in the transaction, the public policy of Oregon should prevail when the interests of neither jurisdiction are clearly more important than those of the other, we conclude that Oregon's public policy of enforcing the agreement between the parties, together with the rule of validation, outweighs California's policy of invalidating it and closing its courts to such actions. Therefore, the trial court did not err[6] in applying Oregon law.

Affirmed.

---

[6] Because this case, like *Lilienthal* and *Fisher,* could be decided either way, it would be difficult to say that the trial court erred. It appears to us that certainty would be preferable to the uncertain result that inheres in the *Lilienthal* approach.