Argued and submitted September 21, 2011, reversed and remanded
December 5, 2012, petition for review allowed April 25, 2013 (353 Or 533)

PEACE RIVER SEED CO-OPERATIVE, LTD.,
dba Peace River Seed Co-Op, Ltd.,
a Canadian corporation,
*Plaintiff-Appellant,*

*v.*

PROSEEDS MARKETING, INC.,
an Oregon corporation,
*Defendant-Respondent.*

Marion County Circuit Court
03C15778; A144564

293 P3d 1058

Wm. Randolph Turnbow argued the cause and filed the briefs for appellant.

J. Michael Alexander argued the cause for respondent. With him on the brief was Swanson, Lathen, Alexander, McCann & Prestwich, PC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

In this breach of contract action, plaintiff Peace River Seed Co-Operative, Ltd. (Peace River) sought to recover damages from defendant Proseeds Marketing, Inc. (Proseeds) based on Proseeds' failure to purchase grass seed from Peace River as agreed pursuant to a series of contracts. The case was tried to the court, which entered a general judgment awarding Peace River damages along with prejudgment interest, post-judgment interest, and costs and disbursements. Peace River now appeals, raising five assignments of error. As explained below, we conclude that several of Peace River's assignments of error are well taken and, therefore, reverse and remand the judgment of the trial court.

The following background facts were found by the trial court or are undisputed. Peace River, a Canadian company, is an agricultural cooperative. Proseeds is an Oregon corporation that, among other things, purchases and resells grass seed. In 1999 and 2000, the parties entered into a series of contracts for sale and purchase of grass seed through an Oregon seed broker. The form contracts were prepared by the broker and, pursuant to those contracts, Proseeds was to purchase from Peace River the total grass-seed production over two years for a set number of acres. The broker noted on the contracts an estimated production for each year. The contracts did not, however, specify particular fields on which the grass seed would be produced or particular farmers that would grow the seed. For the most part, the contracts provided that Proseeds would pay between 70 and 72 cents Canadian per pound of grass seed; the seed was to be delivered by Peace River to Minnesota or Oregon, as directed by Proseeds. The contracts incorporated a set of standard rules for seed trading known as the NORAMSEED rules. After entering into the contracts with Proseeds, Peace River contracted with a number of growers to plant the crop that it would need to fulfill its obligation to Proseeds.

After the parties entered into their contracts, the price of grass seed dropped significantly. Proseeds provided shipping instructions and took delivery of some grass seed pursuant to the contracts, and all of the seed that Peace River

shipped to Proseeds was of the type and quality required under the contracts. However, although Peace River made multiple demands for shipping instructions for the remainder of the grass seed production under the contracts, Proseeds refused to provide shipping instructions. Eventually, Peace River declared Proseeds to be in breach and cancelled the contracts. Over the next several years, Peace River stored the grass seed that its growers had delivered and was eventually able to sell at least some of the seed.

Initially, the parties' dispute was submitted to arbitration, which resulted in a substantial award of damages to Peace River. Peace River sought to enforce the arbitration award in court and, over Proseeds' objection, the trial court concluded that the arbitration was binding and entered judgment. The matter was appealed and, on appeal, this court concluded that the arbitration was not binding and the case was remanded for trial. *Peace River Seed Co-Op v. Proseeds Marketing*, 204 Or App 523, 132 P3d 31, *rev den*, 341 Or 216 (2006).

The case was tried to the court in December 2008. The court concluded that Proseeds had breached its contract with Peace River. Peace River had asserted that, as its damages, it was entitled to recover from Proseeds the difference between the contract price and the market price at the time of the breach. However, the court determined that Peace River could not "recover damages in an amount greater than actually incurred." Accordingly, it concluded that Peace River's compensatory damages would be the lesser of the "difference between the actual sales price received by [Peace River] upon ultimate sale [of the seed] and the contract price with [Proseeds]" or "the difference between the market price and the contract price on the total production, less the seed purchased and paid for by [Proseeds]." The court declined to attempt to calculate the damages based on the evidence submitted and, instead, directed Peace River to calculate damages based on its ruling.

Peace River sought reconsideration, again asserting that, based on Oregon's adoption of the Uniform Commercial Code (UCC), specifically ORS 72.7080(1), it was entitled to damages measured by the difference in the contract price

for the seed and the market price at the time of the breach. It also submitted a calculation of those damages. Proseeds, on the other hand, submitted a calculation of damages that, among other things, purported to account for Peace River's later sales. Peace River responded by indicating that, in its view, there was insufficient evidence to calculate damages based on later sales and that it was "impossible to identify any sales of seed that can be 'identified' to [Proseeds'] (as opposed to others') contracts." Peace River further contended that Proseeds' calculations were based on flawed premises. The trial court noted that it had "no way of knowing what sum [Peace River] believes [it is] entitled to using the measure of damages [the court] found was applicable to this claim." The court concluded that, despite the fact that Peace River contended Proseeds' calculations were based upon "flawed assumptions, average prices, net sales prices, inapplicable credits, inaccurate calculations, and the ignoring of certain facts," because Peace River did not submit damage calculations accounting for its later sales, the court was "stuck with" Proseeds' calculations and had "no option but to accept" them.

In addition, Peace River sought attorney fees and all of its out-of-pocket expenses incurred in the course of litigation. It asserted that it was entitled to recover those amounts under the parties' contracts and an Alberta Rule of Court. The court concluded that Peace River "did not make an adequate allegation necessary to obtain an award of attorney fees pursuant to ORCP 68." Furthermore, it considered the application of the NORAMSEED rules, which Peace River asserted were incorporated into the contracts and allowed for recovery of attorney fees and all other out-of-pocket expenses, and concluded that the provision of the NORAMSEED rules in question was ambiguous and that the "ambiguity must be resolved against the party drafting the contract, and in this instance, that is [Peace River]."[1] The court's opinion did not address Peace River's out-of-pocket expenses. Ultimately, the trial court entered a general judgment that awarded damages. The court did not

---

[1] As discussed later, the trial court did not actually consider the text of the provision of the NORAMSEED rules in question. Instead, it appears to have analyzed language that is not included in those rules.

award attorney fees or out-of-pocket expenses. Peace River now appeals.

In its first assignment of error, Peace River contends that the trial court erred in allowing Proseeds to pay the judgment using a 2002 exchange rate. According to Peace River, pursuant to ORS 24.290 and ORS 24.260, Proseeds was required to pay the judgment using the "conversion rate in effect on the day before the day of payment."[2] Proseeds concedes that the trial court erred "by failing to determine the exchange rate based on a conversion date consistent with" those statutory provisions. We agree, and accept the concession.

Peace River next asserts, in its second assignment of error, that the "trial court erred in awarding $36,750 in damages from an agreed 'wash' transaction in Canadian funds * * * without explanation."[3] In particular, plaintiff asserts that the damages set forth in the evidence had been calculated in U.S. funds rather than Canadian funds, and the trial court, in awarding that dollar amount in Canadian funds, "gave Proseeds the benefit of duplicate discounts for the exchange rate." Proseeds responds that "[t]he issue on appeal was not preserved and in fact was invited" by Peace River. We agree with Proseeds.

To be raised and considered on appeal, an issue must generally be first presented to the trial court. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); *see* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."). "[T]he determination whether a particular issue was preserved for appeal is a 'practical one'; it will depend on whether the policies behind the preservation requirement—judicial efficiency, full development of the

---

[2] ORS 24.290(2) provides that a "judgment or award on a foreign-money claim is payable in that foreign money or, at the option of the debtor, in the amount of United States dollars which will purchase that foreign money on the conversion date at a bank-offered spot rate * * *." Under ORS 24.260(3), the "conversion date" is "the banking day next preceding the date on which money * * * is * * * [p]aid to a claimant in an action or distribution proceeding * * *."

[3] Peace River explains that the "wash" transaction was one where Proseeds agreed to pay to Peace River the difference between the contract price and the market price on the date of intended delivery for a particular quantity of seed.

record, and procedural fairness to the parties and the trial court—are met in an individual case." *Charles v. Palomo*, 347 Or 695, 700, 227 P3d 737 (2010) (quoting *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009)). Accordingly, we review an issue advanced by a party on appeal only where "that party raised the issue below with enough particularity to assure that the trial court was able to 'identify its alleged error' so as to 'consider and correct the error immediately, if correction is warranted.'" *Id.* (quoting *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000)). Similarly, error that is invited is not a ground for reversal. Under the invited error doctrine, "a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (internal quotation marks omitted).

Here, at trial, Peace River submitted two pieces of evidence regarding the transaction at issue and, during the trial, Peace River's attorney informed the court that the damages for the "wash" transaction were in U.S. dollars. However, later, at a hearing many months after the trial for the purpose of discussing damages and attorney fees, the parties and court engaged in the following exchange:

"[Proseeds' attorney]: *** [I]t's reasonable that we would pay that total sum that was Peace River's obligation in that wash around of 36,750. And so the total adding those three numbers is $317,457—317,457 Canadian.

"The Court: Okay.

"[Proseeds' attorney]: And—

"The Court: Give me the three numbers again? 36,750.

"[Proseeds' attorney]: 46,450 for storage. Which is what their claim was—

"The Court: Okay.

"[Proseeds' attorney]: —in Exhibit 409. And $234,257 Canadian.

"The Court: Okay.

"* * * * *

"The Court: Okay. And that's Canadian based upon what exchange rate or is there an exchange rate?

"[Peace River's attorney]: We deal with that at the time of the judgment—

"The Court: Okay. All right.

"[Peace River's attorney]: —under the statute.

"The Court: Okay.

"[Proseeds' attorney]: So it's just in Canadian.

"[Peace River's attorney]: Right."

After the hearing, the court issued a letter opinion in which it accepted the damages presented at the hearing, including the "$36,750 for 'wash around'" and instructed Peace River to submit a form of judgment. After the hearing in which it agreed that the damages were "just in Canadian" dollars, Peace River submitted, among other things, forms of judgment and correspondence to the court. However, it never informed the court of its view that the $36,750 was a U.S. dollar damage amount and that the information the court had to the contrary was incorrect. Thus, Peace River was actively instrumental in the trial court awarding $36,750 in damages for the "wash" transaction in Canadian funds and we do not consider the issue further on appeal.

We turn next to Peace River's third assignment of error. In that assignment, Peace River argues that the trial court erred "in refusing to award Peace River direct damages measured by the difference in the contract price and the market price at the time of breach as required by ORS 72.7080(1)."[4] It is Peace River's position that it is "unequivocally entitled to recover market price damages under ORS 72.7080(1)" and the trial court's measure of damages is "contrary to the clear

---

[4] As discussed below, with respect to its entitlement to attorney fees, Peace River asserts that Canadian law applies. With respect to its third assignment of error, Peace River's arguments are made under the UCC. Likewise, Peace River's assertions to the trial court relied on its interpretation of ORS 72.7030, ORS 72.7060, and ORS 72.7080 as well as the comments to those provisions. Although Peace River now observes that "Alberta has adopted a code similar to, but more general than, the Uniform Commercial Code called the 'Alberta Sales of Goods Act,'" we do not consider the application of Alberta law with respect to this assignment of error.

language" of the UCC.[5] (Boldface omitted.) Proseeds responds that Peace River, "having resold, could not claim greater damages based on the contract/market differential." As explained below, we agree with Peace River that, under the pertinent provisions of the UCC, it may recover its damages pursuant to ORS 72.7080.

Generally, in interpreting a statute, we examine the statutory text in context and in light of any pertinent legislative history offered by the parties. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Furthermore, comments to the UCC "are actually statements of the purpose of each section" and "[t]he legislative intent behind the UCC can therefore be derived from the language of the statute itself and the language of the comments." *Security Bank v. Chiapuzio*, 304 Or 438, 445 n 6, 747 P2d 335 (1987). Because the UCC is a uniform law, case law from other states and discussions by scholars in the field are also relevant. *Id.* Here, in particular, the parties' arguments present the question of how the UCC remedies sections, and specifically ORS 72.7030, ORS 72.7060, and ORS 70.7080, work together.

There are a number of remedies available to a seller of goods upon the buyer's breach. Those remedies are outlined in ORS 72.7030:

"Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract as provided in ORS 72.6120, then also with respect to the whole undelivered balance, the aggrieved seller may:

---

[5] In addition to its broad argument regarding the ability of a nonbreaching seller to choose to seek its remedy pursuant to ORS 72.7080 regardless of a later resale of goods, Peace River also makes several more specific arguments. It contends that the trial court's application of the resale measure of damages, ORS 72.7060, to this case ignores that section's requirement that the "resale must be reasonably identified as referring to the broken contract." Furthermore, it asserts that it was a lost volume seller and that, in any event, for Proseeds to insist on application of the resale measure of damages in ORS 72.7060, Proseeds was required to prove that Peace River was *not* a lost volume seller. We resolve the issue presented based on Peace River's more general argument and, therefore, do not address its other arguments on this issue.

"(1)  Withhold delivery of such goods.

"(2)  Stop delivery by any bailee as provided in ORS 72.7050.

"(3)  Proceed under ORS 72.7040 respecting goods still unidentified to the contract.

"(4)  Resell and recover damages as provided in ORS 72.7060.

"(5)  Recover damages for nonacceptance as provided in ORS 72.7080 or in a proper case the price as provided in ORS 72.7090.

"(6)  Cancel."

Official Comment 1 to that section explains that "[t]his Article rejects any doctrine of election of remedy as a fundamental policy and thus the remedies are essentially cumulative in nature and include all of the available remedies for breach." UCC § 2-703, Comment 1. Thus, whether a particular remedy is available to an aggrieved seller is dependent on the facts of the particular case. *Id.* "It should also be noted that this Act requires its remedies to be liberally administered * * *." UCC § 2-703, Comment 4. Thus, at first blush, it appears that a seller may, at its own option, seek its remedy for a buyer's breach under either ORS 72.7060 or ORS 72.7080. Furthermore, those sections, on their face, do not indicate that a sale of the goods after the buyer's breach will preclude an aggrieved seller from pursuing a remedy pursuant to ORS 72.7080; on its face, the UCC gives a seller the choice of either.

ORS 72.7060 concerns damages relating to a resale:

"(1)  Under the conditions stated in ORS 72.7030 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of ORS 72.7100, but less expenses saved in consequence of the buyer's breach.

"(2)  Except as otherwise provided in subsection (3) of this section or unless otherwise agreed resale may be at public or private sale including sale by way of one or more contracts to sell or of identification to an existing contract

of the seller. Sale may be as a unit or in parcels and at any time and place and on any terms but every aspect of the sale including the method, manner, time, place and terms must be commercially reasonable. The resale must be reasonably identified as referring to the broken contract, but it is not necessary that the goods be in existence or that any or all of them have been identified to the contract before the breach.

"(3) Where the resale is at private sale the seller must give the buyer reasonable notification of intention to resell.

"(4) Where the resale is at public sale:

"(a) Only identified goods can be sold except where there is a recognized market for a public sale of futures in goods of the kind; and

"(b) It must be made at a usual place or market for public sale if one is reasonably available and except in the case of goods which are perishable or threaten to decline in value speedily the seller must give the buyer reasonable notice of the time and place of the resale; and

"(c) If the goods are not to be within the view of those attending the sale the notification of sale must state the place where the goods are located and provide for their reasonable inspection by prospective bidders; and

"(d) The seller may buy.

"* * * * *

"(6) The seller is not accountable to the buyer for any profit made on any resale."

ORS 72.7080, in turn, provides a seller's general measure of damages in the event of a buyer's breach:

"(1) Subject to subsection (2) of this section and to the provisions of ORS 72.7230[6] with respect to proof of market price, the measure of damages for nonacceptance

---

[6] ORS 72.7230 provides:

"(1) If an action based on anticipatory repudiation comes to trial before the time for performance with respect to some or all of the goods, any damages based on market price shall be determined according to the price of such goods prevailing at the time when the aggrieved party learned of the repudiation.

"(2) If evidence of a price prevailing at the times or places described in this chapter is not readily available the price prevailing within any reasonable time before or after the time described or at any other place which in commercial judgment or under usage of trade would serve as a reasonable substitute for the one described may be used, making any proper allowance for the cost of transporting the goods to or from such other place.

or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in ORS 72.7100, but less expenses saved in consequence of the buyer's breach.

"(2) If the measure of damages provided in subsection (1) of this section is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in ORS 72.7100, due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."

Under those sections, where a seller fails to comply with the requirements set forth in ORS 72.7060, the seller may not recover damages under that section and must instead prove damages under ORS 72.7080. UCC § 2-706, Comment 2 ("Failure to act properly under this section deprives the seller of the measure of damages here provided and relegates him to that provided in Section 2-708."). Thus, it is clear that a later resale does not categorically preclude a seller from obtaining damages pursuant to ORS 72.7080. Indeed, where the seller fails to comply with the standards for a resale set forth in ORS 72.7060, he cannot rely on that section for damages and must seek damages pursuant to ORS 72.7080. In the absence of a restriction within the UCC that precludes an aggrieved seller from seeking its remedy pursuant to ORS 72.7080 if the seller has resold, we would decline to impose such a restriction.[7]

---

"(3) Evidence of a relevant price prevailing at a time or place other than the one described in this chapter offered by one party is not admissible unless and until the party has given the other party such notice as the court finds sufficient to prevent unfair surprise."

[7] As part of its analysis, Proseeds refers to a discussion found in James J. White and Robert S. Summers, *Uniform Commercial Code* 223 (1972), in which the authors state that whether the drafters of the UCC "intended a seller who has resold to recover more in damages under 2-708(1) than he could under 2-706 is not clear" but conclude that "he should not be permitted to" do so. We note that other states have come down on both sides of the issue. *See, e.g., Roye Realty & Developing, Inc. v. Arkla, Inc.*, 1993 OK 99, 863 P2d 1150 (1993) (citing Okla Stat Ann title 12A § 2-708, comment 1, which provides that, even where a seller elects to resell, he may still claim damages under § 2-708); *Tesoro Petroleum Corp. v. Holborn Oil Co.*, 547 NYS 2d 1012, 145 Misc 2d 715 (1989); *B & R Textile Corp. v. Rothman Indus.*, 420 NYS 2d 609, 101 Misc 2d 98, *aff'd*, 1979 WL 30097 (1979).

The rationale for allowing an aggrieved seller to choose to seek its remedy under ORS 72.7080, regardless of the fact of a later resale, is as follows:

> "[A]t the time of the breach, the seller retains the right to the benefit of her bargain. The logical and expected measure of damages is the contract price-market price differential. This measure of damages is the risk the buyer assumed by entering into the contract; it is the right conferred upon the seller by the buyer. Therefore, the buyer is not in a position to complain when the seller demands this measure of damages.
>
> "At the same time * * *, the seller's restriction of freedom has ended; the buyer is no longer in a position to demand any restriction on that freedom arising out of the agreement. If the seller decides to resell the goods, or act or forbear in any other way, the buyer is foreclosed from asserting any rights arising from the seller's act or forbearance as long as the seller is claiming damages under section 2-708(1). That logically expected measure of damages is the seller's right under the contract. Moreover, the buyer's obligation is no more than the right the buyer originally conferred upon the seller."

Henry Gabriel, *The Seller's Election of Remedies Under the Uniform Commercial Code: An Expectation Theory*, 23 Wake Forest L Rev 429, 449 (1988); *see also* Ellen A. Peters, *Remedies for Beach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Roadmap for Article Two*, 73 Yale LJ 199, 260 (1963) (history of UCC, including deletion of language prefacing a seller's right to recover damages for nonacceptance with "'so far as any goods have not been resold,'" clarified that an aggrieved seller was not required to elect between damages under

---

In their discussion, White and Summers "admit we are swimming upstream against a heavy current of implication which flows from the comments and the Code history." White and Summers, *Uniform Commercial Code* at 223. However, they rely on section 1-106, which they characterize as stating "that Code remedies are to put the aggrieved party in as good a position as performance would have, but no better." The policy regarding remedies set forth in the UCC is that the "remedies provided by the Uniform Commercial Code must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." ORS 71.3050(1). In our view, the text of the statutory sections, together with the relevant comments, demonstrates the intent to permit an aggrieved seller to choose to seek damages under ORS 72.7080 even where it has resold.

Section 2-706 and Section 2-708 and "indicates a purpose to safeguard alternative remedies"). In other words, in paying the difference between the contract price and the market price at the time of the breach, the breaching buyer is required only to meet the obligation to which it agreed when it entered into the contract. The seller's decision to resell its own goods after the buyer has failed to comply with the terms of the contract does not give the buyer the right to insist upon a different measure of damages. *See* UCC § 2-706, Comment 2 (seller acts on its own behalf; "theory of seller's agency is * * * rejected").

That rationale is especially persuasive under the circumstances presented in this case. After Proceeds failed to fulfill its obligations pursuant to the production contracts, Peace River was left with substantial quantities of grass seed. It proceeded to store the grass seed and attempted to recover damages from Proceeds. Over a period of years after the breach, Peace River eventually sold at least some of the grass seed. We note, however, that there is no indication that, in conducting those resales, Peace River particularly identified those sales as referring to the broken contracts with Proceeds. In any event, in our view, the UCC entitles Peace River to seek the measure of damages to which it was entitled at the time Proceeds breached the contracts: the difference between the price under the parties' contracts and the market price for the seed at the time of the breach. We are unpersuaded that Proceeds should be entitled to the benefit of Peace River's efforts, over several years, to find purchasers for the substantial quantities of grass seed with which it was left following the breach. For those reasons, we agree with Peace River that the trial court erred in its measure of damages, and the case must be remanded for a proper calculation of those damages.

Finally, in its fourth and fifth assignments of error, Peace River asserts that the trial court erred in "failing to award any of Peace River's out-of-pocket expenses of collection, and in failing to issue any findings or conclusions to explain that decision" and "in refusing to award Peace River its reasonable attorneys' fees." Specifically, Peace River asserts that (1) it adequately pleaded a claim for attorney fees, (2) Alberta, Canada, law applies and entitles

it to an award of fees, and (3) it should have been awarded both its fees and out-of-pocket expenses pursuant to the NORAMSEED rules incorporated into the parties' contracts. Proseeds responds that (1) the law of Oregon, not Canada, applies, (2) Peace River did not sufficiently plead a claim for attorney fees under the NORAMSEED rules, and (3) in any event, the NORAMSEED rules cannot be reasonably interpreted to provide for attorney fees.

We begin with the question of whether Peace River adequately pleaded a claim for attorney fees. As noted, the trial court concluded that Peace River had failed to "make an adequate allegation necessary to obtain an award of attorney fees pursuant to ORCP 68." ORCP 68 C(2)(a) provides:

"A party seeking attorney fees shall allege the facts, statute or rule that provides a basis for the award of such fees in a pleading filed by that party. Attorney fees may be sought before the substantive right to recover such fees accrues. No attorney fees shall be awarded unless a right to recover such fee is alleged as provided in this subsection."

Although the pleading requirement of ORCP 68 C(2)(a) is mandatory,

"the party seeking fees does not need to allege the statutory basis for an award when the facts alleged in the party's pleadings would provide a basis for such an award, the parties in the case have 'fairly been alerted that attorney fees would be sought, and no prejudice would result.'"

*Rymer v. Zwingli*, 240 Or App 687, 691, 247 P3d 1246, *rev den*, 350 Or 716 (2011) (quoting *Page and Page*, 103 Or App 431, 434, 797 P2d 408 (1990)).

Here, however, Peace River's operative pleading specifically pleaded the basis for its request for attorney fees. In its third amended complaint, Peace River alleged that, "[p]ursuant to the parties' contracts and Alberta Rule of Court 601, Peace River is entitled to an award of attorney fees as the prevailing party in this action." Peace River attached to the pleading its contracts with Proseeds that, in turn, specifically incorporated the NORAMSEED rules. And, before both the trial court and this court, Peace River has relied on both the Alberta Rule of Court and the NORAMSEED rules,

as incorporated into the parties' contracts, as the basis for its assertion that it is entitled to recover attorney fees. The allegation included in Peace River's pleading is sufficient to satisfy the requirements of ORCP 68 C(2)(a), and the trial court erred in concluding otherwise.

We reach that conclusion notwithstanding Proseeds' argument that Peace River's third amended complaint cannot form the basis for an award of fees under the provisions of the NORAMSEED rules. Proseeds points out that Peace River's second amended complaint included a claim for attorney fees that directly relied on the NORAMSEED rules, which Proseeds moved to strike. The trial court granted Proseeds' motion to strike, and Peace River did not assign error to that ruling. We disagree with Proseeds' assertion that the trial court's ruling on the motion to strike affects Peace River's ability to rely on the NORAMSEED rules as a basis for recovery of attorney fees.

> "When the court grants a motion striking part of a pleading, a party *must* amend the pleading following the procedures set out in ORCP 23. ORCP 23 D, in turn, requires that, when a pleading is amended before trial, 'it shall be done by filing a new pleading to be called the amended pleading, or by interlineation, deletion, or otherwise. Such amended pleading shall be complete in itself, without reference to the original or any preceding amended one.'"

*Olson v. Howard*, 237 Or App 256, 262, 239 P3d 510 (2010) (emphasis in original). "The effect of filing an amended complaint is to supersede the original pleading." *Balboa Apartments v. Patrick*, 351 Or 205, 212, 263 P3d 1011 (2011).

Here, the trial court granted the motion to strike and, as required, Peace River filed its third amended complaint. The third amended complaint did not reference the prior pleadings, but did contain an allegation that Peace River was entitled to attorney fees under a particular Alberta rule, and under the contracts. Those contracts were attached to the pleading and incorporated the NORAMSEED rules by reference. Because the effect of filing the third amended complaint was to completely replace and supersede the prior pleading, the paragraph included in the third amended complaint is the operative allegation for attorney fees. The

order striking a different allegation from an earlier pleading does not affect Peace River's ability to seek attorney fees to the extent that they are sufficiently pleaded in the operative complaint. As we have already concluded, the third amended complaint is sufficient to permit Peace River to seek an award of attorney fees under the Alberta rule and under the NORAMSEED rules, as incorporated into the parties' contracts. Accordingly, we reject Proseeds' contention with respect to this issue.

We turn next to Peace River's assertion that Alberta, Canada, law applies and, under the Alberta Rules of Court, it is entitled to recover its attorney fees. Peace River asserts that Alberta, and all of Canada, "follows the 'English rule' presumptively allowing the prevailing party to recover its reasonable attorney's fees." Proseeds disagrees with Peace River's assertion that Alberta law applies, contending that "a proper examination of the facts, as applied to the pertinent legal rules, instead leads to the application of Oregon law." We agree with Proseeds.

We begin by observing that substantive issues are resolved according to the law of the forum that has the most significant relationship with the dispute while "matters concerned primarily with judicial administration are governed by the law of the forum state because it would create a tremendous burden to require a state court to apply local rules of another jurisdiction." *Stricklin v. Soued*, 147 Or App 399, 403, 936 P2d 398, *rev den*, 362 Or 58 (1997); *Manz v. Continental American Life Ins. Co.*, 117 Or App 78, 80, 843 P2d 480 (1992), *adh'd to as modified on recons*, 119 Or App 31, 849 P2d 549, *rev den*, 317 Or 162 (1993) ("Oregon courts resolve procedural issues under Oregon law and substantive issues according to the forum having the most significant contacts with the dispute."). This court has held that the ability to recover attorney fees is an issue subject to choice-of-law analysis. *See Seattle-First National Bank v. Schriber*, 51 Or App 441, 447-48, 625 P2d 1370 (1981).

"The proponent of the law of another forum has the obligation to identify material differences between the applicable law of Oregon and that of the other forum." *Spirit*

*Partners, LP v. Stoel Rives LLP*, 212 Or App 295, 301, 157 P3d 1194 (2007). Furthermore, where the laws of Oregon and the proposed alternate forum do not actually conflict with one another, Oregon law applies. *Machado-Miller v. Mersereau & Shannon, LLP*, 180 Or App 586, 591, 43 P3d 1207 (2002). Here, Peace River asserts that, in contrast to the general law in Oregon, which allows a prevailing party to recover fees only as provided for by statute or contract, under Alberta law, a party may recover fees merely by virtue of having prevailed in the action. Proseeds does not contend otherwise; it instead argues that Oregon has the most significant relationship to the parties and the transaction.

In the absence of an effective choice of law between the parties, the court considers which forum has the most significant contacts with the parties and the transaction to determine which forum's law applies. *See Manz*, 117 Or App at 80-82; *see also* ORS 15.360 (relating to choice of law applicable to contracts). We also consider whether the "interests of Oregon (its 'public policy') are so basic and important that we should not apply [the law of another jurisdiction], despite its significant connection to the transaction." *Straight Grain Builders v. Track N' Trail*, 93 Or App 86, 90, 760 P2d 1350, *rev den*, 307 Or 246 (1988). Some of the contacts that are generally taken into account to determine the law applicable to an issue include the place of contracting, the place of negotiation of a contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Manz*, 117 Or App at 82 (quoting *Restatement (Second) Conflict of Laws* § 188 (1971)); *see also* ORS 15.360(1) (with respect to choice of law as to the "the rights and duties of a party with regard to an issue in a contract," relevant connections include "place of negotiation, making, performance, or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party"). However, the rights of the parties to a contract for the sale of goods will generally be governed by the law of the place of delivery, unless another forum has a more significant relationship to the transaction. *Restatement* § 191. That is,

in part, because "[d]elivery is the most significant stage of the sales transaction." *Id.* at comment e.

Here, most significantly, the contracts provided that the seed was to be delivered "FOB" to Minnesota or Oregon, as directed by the buyer.[8] In view of that provision, in determining whether to apply Oregon or Canada law, the place of delivery militates in favor of the application of the law of Oregon. Furthermore, the parties entered into their contracts through an Oregon broker and the buyer, Proseeds, is an Oregon company with its principal place of business in Oregon. *See Capital One Bank v. Fort,* 242 Or App 166, 174 n 4, 255 P3d 508 (2011) (noting, to support a conclusion that Oregon law applied, that "most importantly, Oregon is the residence of one of the parties to the contract"). Even though the seller was in Canada and the seed to be sold was grown in Canada, all the circumstances of the transaction in question, taken together, weigh more heavily in favor of the application of Oregon law.

Peace River contends that, even if Oregon law applies, the trial court erred in failing to award attorney fees and other out-of-pocket expenses Peace River incurred because the parties' contracts provide for recovery of "charges for collection." It is Peace River's position that the trial court erred in its interpretation of the parties' agreements and that, under a correct interpretation, it is entitled to recover its expenses, including attorney fees. Proseeds responds that "charges for collection" cannot reasonably be construed to include attorney fees.

As noted, the parties' contracts incorporate the provisions of the NORAMSEED rules. NORAMSEED Rule XIV, which addresses payment, provides, in part:

"2. In all cases, payment shall be made in full and immediately when due. Every portion of a shipment shall be paid for separately, as soon as payment falls due.

"3. The *charges for collection* of payment shall be for the Seller's account unless the Buyer does not pay in full

---

[8] ORS 72.3190(1)(b) provides that, "[w]hen the term is F.O.B. the place of destination, the seller must at the expense and risk of the seller transport the goods to that place and there tender delivery of them * * *."

and immediately when due, in which case they shall be for the Buyer's account.

"4.   a.   If the Buyer does not pay within three working days of the due date of payment, from the date on which he can legally do so, he shall pay the *charges for collection,* as well as interest at a rate of 5% per annum above the official bank rate in the Seller's country at the time the invoice was due for payment."

(Emphasis added.) The parties' dispute regarding attorney fees and other expenses in this case centers on the meaning of the phrase "charges for collection."

Thus, the question before us involves the construction of a contract. "To interpret a contractual provision * * * the court follows three steps. First, the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). However, "[w]ords or terms of a contract are ambiguous when they can, in context, be given more than one meaning." *Id.* at 363-64 (internal quotation marks omitted). If the provision in question is ambiguous, the trier of fact will "ascertain the intent of the parties and construe the contract term consistent with the intent of the parties." *Id.* at 363 (internal quotation marks omitted). To resolve that question, the trial court may receive and consider extrinsic evidence relating to intent. *Id.* at 363-64; *see also Williams v. Wise*, 139 Or App 276, 281, 911 P2d 1261 (1996). "If the meaning of a contractual provision remains ambiguous after the first two steps have been followed, the court relies on appropriate maxims of construction." *Yogman*, 325 Or at 364.

Here, we conclude that the trial court did not properly follow those analytical steps in determining whether Peace River could recover its attorney fees and other out-of-pocket expenses as "charges for collection." We first observe that, in its analysis, the trial court discussed the meaning of "the term 'fees' in the NORAMSEED rules." However, that term is not used in the relevant rule and was not at issue in this case; instead, the parties' dispute was about the meaning of

the term "charges for collection." As Proseeds acknowledges, the trial court did not construe that contractual language. Indeed, the trial court never mentioned the phrase "charges for collection" in its determination of whether Peace River was entitled to recover attorney fees and other expenses under the contract.

Nonetheless, whether a contractual term is ambiguous is a question for the court and, if the provision is unambiguous, "the court construes the contract as a matter of law." *Business Men's Service Co. v. Obrist*, 130 Or App 577, 581, 883 P2d 219 (1994), *rev den*, 320 Or 507 (1995). As noted, a contractual provision is ambiguous "if it is capable of more than one sensible and reasonable interpretation"; a "term is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Id.*

Here, we conclude that, as a matter of law, the term "charges for collection" is ambiguous; the meaning of the term is not so clear as to preclude doubt by a reasonable person. Under the provisions at issue, "charges for collection" are for the seller's account unless the buyer does not pay when due; under those circumstances, the buyer "shall pay the charges for collection." It is not clear whether that phrase refers to pecuniary obligations incurred by the seller in the act of collecting on an existing debt or in establishing the existence of the debt in the first place. Furthermore, it is unclear how broad the "charges" that must be paid are— whether the term (1) includes only administrative costs of billing, (2) extends as broadly as Peace River reads it, including all costs of subsequent litigation to establish that a debt is owed and attorney fees incurred in such litigation, or (3) contemplates payment of some amount between those extremes. In any event, the term "charges for collection" is capable of more than one reasonable interpretation and is, therefore, ambiguous.

As noted, when a contractual provision is ambiguous, the necessary next step in the analysis is for the court to ascertain the intent of the parties and to consider extrinsic evidence, if any, pertinent to that issue. Importantly, here, it appears that the trial court failed to attempt to ascertain the intent of the parties, instead skipping from determining the agreement to be ambiguous to applying a maxim of

construction. It is only if the court is unable to determine the intent of the parties in light of the circumstances and extrinsic evidence on that issue that it is to apply maxims of construction to construe a contractual provision. "Determining the meaning of * * * extrinsic evidence is * * * a factual inquiry to be performed by the factfinder in the first instance." *Hammond v. Hammond,* 246 Or App 775, 783, 268 P3d 691 (2011).

In this case, there was some evidence in the record that would relate to the parties' intent. Peace River "urge[d the trial court] that the 'tradition'" in the industry treated the NORAMSEED rules as entitling the prevailing party to attorney fees. Furthermore, there was testimony from the manager for Peace River that expenses, including legal fees, were "just the cost of collection" and that it was customary to be able to recover those expenses after litigation. Because a determination of the intent of the parties and the evaluation of extrinsic evidence is a factual inquiry, and because the trial court does not appear to have engaged in that inquiry, we conclude that it is appropriate to remand with respect to this issue so that the trial court may consider the intent of the parties in the first instance.

We further observe that, when it engaged in the third step of the contractual analysis, the trial court in this case determined that the contract "must be resolved against the party drafting the contract, and in this instance, that is [Peace River]." However, as the parties agree on appeal, Peace River did not draft the contract in this case. Indeed, the trial court itself specifically found that the parties "entered into a contract for the sale and purchase of seed through a broker. The contract was prepared by the broker." Thus, the court's reliance on that maxim of construction to construe the provision against Peace River, under the facts of this case, was improper. If, on remand, after considering evidence relating to the parties' intent, the court concludes that the meaning of the provision in question remains ambiguous, it must decide on an appropriate maxim of construction, in view of the facts of the case, to use at the third step of the analysis.

Reversed and remanded.