Argued and submitted September 19, 2013, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court March 20, 2014

PEACE RIVER SEED CO-OPERATIVE, LTD.,
dba Peace River Seed Co-Op, Ltd.,
a Canadian corporation,
*Respondent on Review,*

*v.*

PROSEEDS MARKETING, INC.,
an Oregon corporation,
*Petitioner on Review.*

(CC 03C15778; CA A144564; SC S060957)

322 P3d 531

C. Robert Steringer, Harrang Long Gary Rudnick P.C., Portland, argued the cause and filed the briefs for petitioner on review. With him on the briefs were James E. Mountain, Jr., J. Michael Alexander, and John C. Rake.

Wm. Randolph Turnbow, Eugene, argued the cause and filed the brief for respondent on review.

Balmer, Chief Justice, and Kistler, Walters, Linder, Brewer, and Baldwin, Justices.**

BALMER, C. J.

---

** Landau, J., did not participate in the consideration or decision of this case.

## BALMER, C. J.

In this breach of contract case, we examine the availability of different remedies under the Uniform Commercial Code (UCC) for an aggrieved seller of goods after a buyer breaches a .contract to purchase those goods. Specifically, we consider the relationship between ORS 72.7080(1), which measures a seller's damages as the difference between the unpaid contract price and the *market* price at the time and place for tender, and ORS 72.7060, which measures a seller's damages as the difference between the contract price and the *resale* price. We examine those provisions to determine whether an aggrieved seller who has resold goods can recover a greater amount of damages using the market price measure of damages than the seller would recover using the resale price measure of damages.

Plaintiff, a seller seeking damages from a buyer that breached contracts to purchase goods, argued at trial that it was entitled to recover its market price damages. The trial court determined that plaintiff was entitled to the lesser of its market price damages or its resale price damages, and the court ultimately awarded plaintiff its resale price damages. The Court of Appeals reversed and remanded, because the court determined that plaintiff could recover its market price damages, even though it had resold some of the goods at issue. *Peace River Seed Co-Op v. Proseeds Marketing*, 253 Or App 704, 717, 293 P3d 1058 (2012). The Court of Appeals also reversed the trial court's decision not to award plaintiff its attorney fees under the parties' contracts, and remanded for the trial court to determine whether the parties intended the ambiguous contract term "charges for collection" to include attorney fees. *Id.* at 724-25. For the reasons that follow, we agree that plaintiff was entitled to recover its market price damages, even if those damages exceeded plaintiff's resale price damages. We conclude, however, that plaintiff is not entitled to recover its attorney fees under the parties' contracts.

### FACTS AND PROCEEDINGS BELOW

The facts material to our discussion are mostly undisputed. Peace River Seed Co-Operative ("plaintiff") is a Canadian company that buys grass seed from and sells

grass seed for grass seed producers. Proseeds Marketing ("defendant") is an Oregon corporation that purchases grass seed from various sources to resell to end users. A broker prepared and the parties agreed to multiple contracts for defendant to purchase from plaintiff the total production of grass seed from a certain number of acres for a fixed price over a period of two years. The contracts incorporated the NORAMSEED Rules for the Trade of Seeds for Planting, which have been adopted by the American and Canadian Seed Trade Associations to govern the trade of seed. The NORAMSEED Rules provide that the UCC applies to transactions within the United States, and both parties have litigated this case under the UCC.

Under the contracts, defendant was to provide shipping and delivery instructions to plaintiff. During the contract period, however, the price of grass seed fell dramatically. Although defendant initially provided shipping instructions and plaintiff shipped conforming seed, defendant eventually refused to provide shipping instructions for delivery of additional seed under the contracts. After multiple requests for shipping instructions, and defendant's continued refusal to provide them, plaintiff cancelled the contracts. Over the next three years, plaintiff was able to sell at least some of the seed that defendant had agreed to purchase to other buyers.

The parties submitted their contract dispute to arbitration. Following an arbitrator's award in plaintiff's favor, plaintiff sought to enforce the award in court, and the trial court entered judgment over defendant's objection. Defendant appealed, and the Court of Appeals remanded for trial after concluding that the arbitration was not binding. *Peace River Seed Co-Op v. Proseeds Marketing*, 204 Or App 523, 526, 534, 132 P3d 31, *rev den*, 341 Or 216 (2006). In the subsequent bench trial, the court concluded that defendant had breached the contracts and that plaintiff had been entitled to cancel the contracts and seek damages. When the trial court awarded plaintiff its damages, the court noted that the parties had entered into fixed price contracts, "regardless of the market price at the time of harvest and shipment," and the court explained that "[e]ach party takes certain risks and hopes for certain benefits in this type of

a contract." Nonetheless, the court concluded that plaintiff had an "obligation to mitigate damages" and was "not entitled to recover damages in an amount greater than actually incurred." Accordingly, the trial court awarded plaintiff the lesser of two measures of damages: the difference between the unpaid contract price and the market price (the measure under ORS 72.7080(1)) or the difference between the contract price and the resale price (the measure under ORS 72.7060). The trial court directed plaintiff to submit calculations of each measure of damages.

Both parties sought reconsideration. At a hearing on those motions, the trial court stated that it would not be "absolutely one-hundred percent convinced" about the appropriate measure of damages until it could see how each party calculated market price damages and resale price damages. The trial court acknowledged that plaintiff previously had submitted its calculation of market price damages and had proven those damages, but the court also directed the parties to calculate damages to account for any seed that had been resold. Subsequently, defendant submitted its analysis of damages based on the prices that plaintiff had received when it resold. Plaintiff criticized defendant's analysis and stuck by its calculation of market price damages, without submitting an analysis of damages based on resale prices.

Each party's calculation of damages for one of the breached contracts, contract 1874, illustrates the implications of using the market price or the resale price to calculate damages. The evidence at trial showed that the contract price for contract 1874 was $0.72 per pound. Plaintiff sought damages of $3,736.00 for that contract, apparently based on a market price of $0.64 per pound, resulting in a contract price minus market price differential of $0.08 per pound for 46,700 pounds of seed not accepted by defendant.[1] Defendant argued, however, that plaintiff had resold at least some of that seed for $0.75 per pound, $0.03 per pound above the contract price and $0.11 per pound above plaintiff's market price calculation. Thus, according to defendant, plaintiff did

---

[1] Market price is calculated "at the time and place for tender." ORS 72.7080(1). At trial, the evidence established a somewhat different market price, but that difference does not affect the legal analysis.

not have any damages for that resold seed because plaintiff had resold for more than the contract price. If plaintiff recovered $0.08 per pound in market price damages, in addition to the $0.75 per pound that plaintiff allegedly had received on the resale, plaintiff ultimately would recover $0.83 per pound, which was $0.11 more than the contract price.[2]

For that same contract, however, where the contract price was $0.72 per pound, defendant noted that some of the seed had been resold for $0.60 per pound. That meant that the resale price damages would be $0.12 per pound. That is, for at least some of the resold seed from contract 1874, plaintiff's resale price damages of $0.12 per pound would exceed plaintiff's claimed market price damages of $0.08 per pound. In sum, the parties' calculations of damages for contract 1874 showed that, with regard to some seed, the market price damage calculation would lead to a larger award, but that, with regard to other seed, the resale price damage calculation would lead to a larger award. On the whole, however, defendant calculated that plaintiff would receive a smaller amount of damages using the resale price measure of damages than plaintiff calculated that it would receive using the market price measure of damages.

The trial court awarded plaintiff damages using the resale price measure of damages as calculated by defendant.[3] The trial court reasoned that plaintiff had not calculated damages as ordered by the court. The court stated that "even if Plaintiff [was] correct that Defendant's calculations [were] somehow flawed or incorrect, no alternative calculation ha[d] been offered." Thus, the trial court concluded that it was "left with no option but to accept Defendant's calculation."

---

[2] Even if plaintiff could not recover its market price damages, plaintiff would have received $0.03 per pound more than the contract price because plaintiff allegedly resold for more than the contract price. That is a result, however, that the UCC explicitly allows. *See* ORS 72.7060(6) ("The seller is not accountable to the buyer for any profit made on any resale.").

[3] Although we refer to defendant's calculation of damages as plaintiff's resale price damages, where defendant could not identify a resale, it appears that defendant used a market price calculation. Because the parties' dispute centers on the trial court's decision to use the resale price measure of damages where possible, we use the shorthand "resale price damages" to refer to defendant's calculation of damages, which the trial court awarded plaintiff.

The trial court also denied plaintiff's request for attorney fees. The court concluded that plaintiff had not adequately alleged its request for attorney fees, and, on the merits, rejected plaintiff's argument that it was entitled to recover attorney fees under a provision of the NORAMSEED Rules, which the parties had incorporated into their contracts. Those rules allowed a seller to recover "charges for collection of payment" if the buyer did not pay in full and immediately when due. Rather than construing the phrase "charges for collection of payment," however, the trial court stated that the term "fees" in the NORMASEED Rules was ambiguous, and the court purported to construe the term against plaintiff as the drafter of the contracts that had incorporated those rules.[4]

Plaintiff appealed. As relevant on review, plaintiff argued that the trial court erred in not awarding plaintiff its market price damages under ORS 72.7080(1) or its attorney fees under the NORAMSEED Rules. *Peace River*, 253 Or App at 711, 722-23.

The Court of Appeals reversed and remanded. On the first issue, the court noted that, at least on its face, the UCC allows a seller to recover damages as calculated under either ORS 72.7060 (contract price less resale price) or ORS 72.7080(1) (contract price less market price). *Id.* at 713. After reviewing the relevant statutory provisions, the court went on to conclude that, "[i]n the absence of a restriction within the UCC that precludes an aggrieved seller from seeking its remedy pursuant to ORS 72.7080 if the seller has resold, we would decline to impose such a restriction." *Id.* at 715. In support of that conclusion, the court explained that, once the buyer breaches, the buyer loses any right to control the goods or to "insist upon a different measure of damages." *Id.* at 716-17. Moreover, the court noted, market price damages require the buyer to fulfill only the bargain to which it agreed. *Id.* at 717. Although the court acknowledged that the UCC policy is that remedies should put an aggrieved party "in as good a position as if the other party had fully performed," ORS

---

[4] Neither party contends that the reasoning that the trial court applied in its contract interpretation analysis is correct. The term "fees" does not appear in the NORAMSEED Rules, and plaintiff did not draft the parties' contracts.

71.3050(1), the court concluded that the intent of the UCC is to allow an aggrieved seller to recover market price damages, even if the seller has resold the goods. *Id.* at 715-16 n 7. The court remanded the case for a proper calculation of plaintiff's market price damages. *Id.* at 717.

On the issue of attorney fees, the Court of Appeals determined that the trial court had erred in its contract interpretation analysis by both interpreting the wrong contract term and failing to follow the contract interpretation framework in *Yogman v. Parrott*, 325 Or 358, 361, 363-64, 937 P2d 1019 (1997). *Peace River*, 253 Or App at 723-25. Applying the *Yogman* analysis, the Court of Appeals first determined that the relevant contract term, "charges for collection," was ambiguous. The court went on to note that the trial court had failed to determine the intent of the parties as necessary under the second step of *Yogman. Id.* at 724. Because the court concluded that there was some evidence in the record of the parties' intent regarding that contract term, the court remanded to the trial court to consider the parties' intent in the first instance. *Id.* at 725.

Defendant sought review and now urges this court to reverse the Court of Appeals and affirm the trial court on both issues.

### AN AGGRIEVED SELLER'S REMEDIES UNDER THE UCC

The UCC provides a variety of remedies to an aggrieved seller. *See* ORS 72.7030 (providing an index of a seller's remedies). As noted, the issue in this case is whether an aggrieved seller who has resold goods can recover the difference between the unpaid contract price and the market price under ORS 72.7080(1), even when market price damages would exceed resale price damages under ORS 72.7060.

Commentators and courts have taken two different approaches to this issue. Relying on the text and context of the sellers' remedies provisions, some commentators have argued that the drafters of the UCC intended for sellers to be able to recover either market price damages or resale price damages, even if the seller resold the goods for more than the market price. *See, e.g.,* Henry Gabriel, *The*

*Seller's Election of Remedies Under the Uniform Commercial Code: An Expectation Theory*, 23 Wake Forest L Rev 429, 429 (1988) (arguing that an aggrieved seller "should be allowed to elect between the two remedies regardless of the seller's good faith post-breach activities concerning the non-accepted goods"); Ellen A. Peters, *Remedies for Breach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Roadmap for Article Two*, 73 Yale LJ 199, 260 (1963) (arguing for a "non-restrictive reading of the various remedies sections to preserve full options to use or to ignore substitute transactions as a measure of damages"). On the other hand, Professors White and Summers, whose view has been adopted by a number of courts, have argued that the UCC's general policy is that damages should put a seller only in "as good a position as if the other party had fully performed," ORS 71.3050(1), meaning a seller who has resold should not be allowed to recover more in market price damages than it could recover in resale price damages. James J. White, Robert S. Summers and Robert A. Hillman, 1 *Uniform Commercial Code* § 8:13, 689 (6th ed 2012) (so stating). We agree with those commentators who have observed that the drafters did not clearly resolve this issue. *See, e.g., id.* at 691 (noting that the UCC and the comments are "equivocal" about whether a seller can recover more under section 2-708(1) than it could recover under section 2-706); Gabriel, 23 Wake Forest L Rev at 430 (noting "the failure of the drafters to clearly resolve the problem of election between sections 2-706 and 2-708(1)"). Nonetheless, we conclude that the text, context, and legislative history of the sellers' remedies provisions support a seller's right to recover either market price damages or resale price damages, even if market price damages lead to a larger recovery.

We analyze the relevant statutory provisions using the framework described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin by examining the statute's text and context to determine the legislature's intent regarding a seller's remedies under the UCC. Because the relevant statutes are part of the UCC, we also consider the official UCC comments as an indication of the legislature's intent. *Security Bank v. Chiapuzio*, 304 Or 438, 445 n 6, 747 P2d 335 (1987) (noting that the Oregon legislature took note

of the official comments of the UCC, which are "statements of the purpose of each section"). In addition, "the legislative intent to make the UCC a uniform code makes relevant the decisions of other courts that have examined these questions and the discussions of the questions by scholars in the field, especially those scholars who participated in drafting the UCC." *Id.* We also examine legislative history. The Oregon legislature enacted the UCC in 1961 "with little debate or discussion of the legislative intent," but the UCC was proposed so that Oregon could "obtain the same advantages that other states had gained from the adoption of a uniform and comprehensive set of commercial statutes." *Id.* Given "the legislative intent to make the UCC a uniform code," *id.*, we consider prior drafts of the UCC, as drafted by the National Conference of Commissioners on Uniform State Laws (NCCUSL), as part of the legislative history. *Cf. Datt v. Hill*, 347 Or 672, 680, 227 P3d 714 (2010) (examining history of uniform act in interpreting Oregon statute taken from that act).

Before examining the statutory scheme, however, we briefly review the law as it existed prior to the enactment of the UCC in Oregon. At common law, an aggrieved seller

"ha[d] the election of three remedies: (1) To hold the property for the purchaser, and to recover of him the entire purchase money; (2) to sell it, after notice to the purchaser, as his agent for that purpose, and recover the difference between the contract price and that realized on the sale; (3) to retain it as his own, and recover the difference between the contract and market prices at the time and place of delivery[.]"

*Krebs Hop Co. v. Livesley*, 59 Or 574, 588, 118 P 165 (1911). *Krebs Hop Co.* suggests that, before Oregon adopted the UCC, an aggrieved seller had to elect between remedies, and if the seller resold the goods, it had elected its remedy and could recover only resale price damages, but not market price damages. *See* Gabriel, 23 Wake Forest L Rev at 446 (explaining that, under pre-UCC law, an aggrieved seller who resold the goods was assumed to have elected the resale remedy and was barred from using an inconsistent remedy, such as market price damages). Although the UCC retained some aspect of each of the remedies available at common

law, as explained below, it specifically rejected the doctrine of election of remedies. *See* Legislative Comment 1 to ORS 72.7030, *reprinted in* Legislative Counsel Committee, *Oregon's Uniform Commercial Code with Comments and Index and Tables* 101 (1962) (noting that the UCC chapter on sales "reject[s] any doctrine of election of remedy as a fundamental policy"); Peters, 73 Yale LJ at 204 n 16 (noting that many sections of the UCC were "designed to mitigate the effect of prior law insofar as it forced a choice of remedy on the party aggrieved without regard to the adequacy of compensation").

When a buyer breaches a contract for the sale of goods, ORS 72.7030 provides a seller with an index of remedies:

"Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract as provided in ORS 72.6120, then also with respect to the whole undelivered balance, the aggrieved seller may:

"*****

"(4)   Resell and recover damages as provided in ORS 72.7060.[5]

"(5)   Recover damages for nonacceptance as provided in ORS 72.7080 or in a proper case the price as provided in ORS 72.7090.[6]

"(6)   Cancel."

---

[5] ORS 72.7060(1) provides,

"Under the conditions stated in ORS 72.7030 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of ORS 72.7100, but less expenses saved in consequence of the buyer's breach."

[6] ORS 72.7080(1) provides,

"Subject to subsection (2) of this section [with respect to lost profits] and to the provisions of ORS 72.7230 with respect to proof of market price, the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in ORS 72.7100, but less expenses saved in consequence of the buyer's breach."

That section lists the seller's remedies, which, as relevant here, include resale price damages, ORS 72.7060, and market price damages, ORS 72.7080. Moreover, it lists those remedies without any limiting conjunction, such as "or," that might suggest that the remedies are mutually exclusive. In contrast, a similar index of a buyer's remedies after a seller's breach provides that the buyer may "(a) 'Cover' and have damages * * * *or* (b) Recover damages for nondelivery." ORS 72.7110(1) (emphasis added). Thus, although the buyer's index of remedies suggests that a buyer who covers may be precluded from seeking market price damages, the seller's index of remedies does not contain a similar limitation if the seller chooses to resell. It follows that the text of ORS 72.7030 supports plaintiff's argument that a seller who has resold is not necessarily limited to its resale price damages under ORS 72.7060, but has the option of seeking to recover market price damages under ORS 72.7080.

The UCC comments to the statute describing a seller's remedies confirm that interpretation. Although the comments acknowledge that, in a particular case, the pursuit of one remedy may prevent a seller from obtaining certain damages, the comments also state that the UCC chapter on sales "reject[s] any doctrine of election of remedy as a fundamental policy and thus the remedies are essentially cumulative in nature and include all of the available remedies for breach." Legislative Comment 1 to ORS 72.7030 at 101; *id.* ("Whether the pursuit of one remedy bars another depends entirely on the facts of the individual case."). In contrast, the comments to the statute describing a buyer's market price remedy explain that that remedy "is completely alternative to 'cover' under ORS 72.7120 and applies *only when and to the extent that the buyer has not covered.*" Legislative Comment 5 to ORS 72.7130 at 110 (emphasis added). Thus, while the comments to the statute describing a seller's remedies expressly reject the doctrine of election of remedies, the comments to the statute describing a buyer's market price remedy appear to adopt that doctrine. Those comments further indicate that a seller who resells goods after a buyer's breach would not be considered to have "elected" the resale remedy and thus would not be precluded from seeking a larger damage recovery using the market price measure of damages.

The text of ORS 72.7060, which sets forth the seller's resale remedy, similarly suggests that a seller who resells goods is not necessarily precluded from using the market price measure of damages, even if it leads to a larger recovery. ORS 72.7060(1) states that "the seller *may* resell the goods concerned or the undelivered balance thereof," which suggests that an aggrieved seller is not required to resell. (Emphasis added.) *See* White, Summers and Hillman, 1 *Uniform Commercial Code* § 8:6 at 671 ("Resale is not mandatory."). Similarly, the text of ORS 72.7060 indicates that a seller who resells is not required to seek damages using the resale remedy. *See* ORS 72.7060(1) ("Where the resale is made in good faith and in a commercially reasonable manner the seller *may* recover the difference between the resale price and the contract price * * *." (Emphasis added.)). In fact, the unqualified text of ORS 72.7080(1) seems to suggest that market price is in fact the default measure of damages. *See* ORS 72.7080(1) ("Subject to * * * the provisions of ORS 72.7230 with respect to proof of market price, *the* measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price * * *." (Emphasis added.)). Thus, the text of the remedy provisions does not limit a seller who resells to its resale price damages.

As defendant notes, however, one of the comments to ORS 72.7060 does indicate that the drafters intended ORS 72.7060 to be a seller's primary remedy, and did not intend to allow a seller to recover more under the market price remedy. Comment 2 to ORS 72.7060 explains that "[f]ailure to act properly under ORS 72.7060 *deprives* the seller of the measure of damages there provided and *relegates* him to that provided in ORS 72.7080 [market price damages]." Legislative Comment 2 to ORS 72.7060 at 104 (emphasis added). That language suggests that the comment drafters viewed market price damages as less favorable, but it does not indicate *why* they viewed them that way. The pejorative language used in the comments does not necessarily lead to the conclusion that a seller who resells cannot use the market price remedy or must use the resale price remedy if it would yield the same or a smaller

amount of damages than the market price remedy. That language instead could indicate that market price damages are considered less favorable because market price is often hard to prove, as many commentators have noted. *See, e.g.,* Henry J. Bailey III, 1 *The Oregon Uniform Commercial Code* § 2.140, 279 (2d ed 1990) (noting that the remedy under ORS 72.7080(1) "is often a less advantageous remedy for the seller because of difficulty of proof of market price"). As a result, that comment language is not dispositive, particularly in light of the text of the remedy provisions.

Turning to legislative history, prior drafts of the UCC provide additional insight into the drafters' intent to allow a seller to recover its market price damages, even if the seller has resold. In particular, in an earlier draft of the section describing the resale price remedy, section 2-706, one of the comments stated that that section provided

> "'the *exclusive* measure of the seller's damages where the resale has been made in accordance with the requirements of this section. Evidence of market or current prices at any particular time or place is relevant *only* on the question of whether the seller acted with commercially reasonable care and judgment in making the resale.'"

*See* Gabriel, 23 Wake Forest L Rev at 436 (quoting UCC § 2-706 cmt 3 (May 1949 Draft) (emphasis added)). Under that version of the UCC, a seller who had met the resale requirements would be required to use the resale price measure of damages. That comment later was revised, however, and when Oregon adopted the UCC, the comment included language that also had been in the 1949 draft comment, but the mandatory language had been removed, leaving only the permissive wording: "If the seller complies with the prescribed standard of duty in making the resale, he *may* recover from the buyer the damages provided for in subsection (1)." Legislative Comment 3 to ORS 72.7060 at 104 (emphasis added). That shift, from resale as the exclusive remedy to resale as a permissible remedy, indicates that the drafters intended for a seller to be able to choose to recover market price damages, even after reselling under ORS 72.7060.

Defendant argues, however, that even if a seller who resells can recover market price damages under ORS 72.7080(1), those damages cannot exceed the seller's resale price damages. Defendant primarily relies on the general policy statement set forth in ORS 71.3050 to support its argument. ORS 71.3050(1) provides,

"The remedies provided by the Uniform Commercial Code must be liberally administered to the end that the aggrieved party may be put *in as good a position as if the other party had fully performed* but consequential damages, special damages or penal damages may not be had except as specifically provided in the Uniform Commercial Code or by other rule of law."

(Emphasis added.) Defendant reasons that the reference in ORS 71.3050(1) to putting an aggrieved party "in as good a position as if the other party had fully performed" acts as a limit on the damages that a party can receive. Commentators and courts likewise have relied on that provision in concluding that a seller's market price damages should be limited to the actual loss suffered, by taking into account any goods that have been resold. *See, e.g.,* White, Summers and Hillman, 1 *Uniform Commercial Code* § 8:13 at 689 ("We conclude that a seller should not be permitted to recover more under 2-708(1) [market price damages] than under 2-706 [resale price damages] * * *. Section 1-305 indicates that a seller who has resold may not invoke 2-708(1)."); *Coast Trading Co. v. Cudahy Co.,* 592 F2d 1074, 1081-83 (9th Cir 1979) (adopting approach of White and Summers and reducing section 2-708(1) market price damages of seller who conducted commercially unreasonable resale to what seller could have recovered under section 2-706 if resale had been commercially reasonable); *Tesoro Petroleum Corp. v. Holborn Oil Co.,* 547 NYS2d 1012, 1016-17 (NY Sup Ct 1989) (adopting approach of White and Summers and limiting seller to resale price damages because higher market price damages would create a "windfall" inconsistent with the general policy of the UCC).

The text of ORS 71.3050(1) indicates that the drafters of the UCC intended a seller's remedies to be compensatory. *See* Legislative Comment 1 to *former* ORS 71.1060 at 6 (1963), *amended and renumbered as* ORS 71.3050 (2009)

(noting that statute is intended to "make it clear that compensatory damages are limited to compensation"). The text of that section, however, also provides that the remedies in the UCC are to be "liberally administered." ORS 71.3050(1); *see also* Legislative Comment 4 to ORS 72.7030 at 101 ("It should also be noted that the Uniform Commercial Code requires its remedies to be liberally administered * * *."). Nonetheless, we agree with defendant that the general policy of compensation provided in ORS 71.3050(1) must be taken into account.

We do not agree, however, that that policy necessarily limits an aggrieved seller who has resold to its resale price damages. Defendant argues that if it had fully performed, plaintiff could expect to recover only the contract price, and that limiting plaintiff to the difference between the contract price and the resale price therefore gives it the benefit of its bargain. As Professor Gabriel notes, however, limiting a seller to its resale price damages does not account fully for either party's expectations upon entering into the contract. He explains that a seller expects to be able to recover the difference between the contract price and the market price because it is the "logical and expected measure of damages," and because the ability to recover market price damages "is the natural assumption the seller makes in return for the risk inherent in the contract that the sale may not turn out to be economically beneficial to the seller. That the seller then resells the goods in no way diminishes this expectancy regarding the first contract." Gabriel, 23 Wake Forest L Rev at 449, 453. From the buyer's perspective, he argues that "the [buyer] has specific obligations and will suffer the consequences of the failure to perform these obligations because this is the [buyer's] expectation." *Id.* at 450. In other words, contrary to defendant's argument, an aggrieved seller expects to be able to recover market price damages under the contract, and a breaching buyer expects to have to fulfill its obligation to the seller—even if a seller resells and recovers market price damages, "the buyer's obligation is no more than the right the buyer originally conferred upon the seller." *Id.* at 449.

Moreover, limiting an aggrieved seller to its resale price damages ignores the risk for which the parties

bargained. When parties bargain for fixed price contracts, each party assumes the risk of market price fluctuations. The parties are willing to take that risk because of the benefits that they might receive: if the market price decreases, the seller benefits, and if the market price increases, the buyer benefits. In a fixed price contract, therefore, market price damages represent the risk for which both parties bargained.[7] *Cf. id.* ("The logical and expected measure of damages is the contract price-market price differential. *This measure of damages is the risk the buyer assumed by entering into the contract*; it is the right conferred upon the seller by the buyer." (Emphasis added.)).[8] For those reasons, we conclude that a seller can recover market price damages, even if the seller resells some of the goods at above the market price at the time and place for tender.

Defendant argues, however, that that conclusion does not account for an aggrieved party's duty to mitigate, which is consistent with the UCC's policy of minimizing damages. *See* Legislative Comment 1 to *former* ORS 71.1060 at 6 (1963) ("[T]he Code elsewhere makes it clear that damages must be minimized.");[9] Roy Ryden Anderson, 1 *Damages Under the Uniform Commercial Code* § 1:6, 11-12 (2012)

---

[7] We do not, however, foreclose the right of a seller of goods under a fixed price contract to recover resale price damages under ORS 72.7060.

[8] Professor Gabriel's explanation also responds to the argument that to permit a seller to recover market price damages when it has resold some or all of the goods confers an improper "windfall" on the seller. If a seller is limited to its resale price damages, it is just as accurate to say that the breaching buyer has received a "windfall," because the seller's success in reselling reduces the damages that the buyer must pay—and not because of anything the buyer did, but only because of the seller's successful efforts. As discussed in the text, the UCC imposes no obligation on the seller to resell, and the buyer's expectation, at the time the buyer entered into the contract, was that it might have to pay market price damages if it breached the contract. The point is not that one party or the other gets an undeserved "windfall," but rather that the provisions of the UCC, as we have interpreted them here, determine the rights and obligations of each party and therefore what is expected of each party and what each may expect of the other, as well as the consequences of either party's breach. The result we reach here is consistent with those expectations. *See generally* Gabriel, 23 Wake Forest L Rev at 453.

[9] After that comment, the drafters cite to ORS 72.7060(1), which is the seller's resale remedy, and ORS 72.7120(2), which is the buyer's cover remedy. As already noted, however, the text demonstrates—and commentators agree—that neither resale nor cover is mandatory, so we do not understand that citation to imply that a seller must resell to mitigate its damages.

(noting that the duty to mitigate is "implicit in every damage remedy" and typically is justified under section 1-305). We do not understand the duty to mitigate to be a limit on a seller's market price damages because, as noted, the text demonstrates and commentators agree that a seller is not required to resell goods after a buyer's breach. If the duty to mitigate does not require the aggrieved seller to resell its goods, we do not think that the duty to mitigate can require the seller to use the resale price measure of damages. *See* Gabriel, 23 Wake Forest L Rev at 445 ("The seller has no obligation to resell, and the failure to resell the goods does not affect the right to proceed under section 2-708(1). If non-action by the seller does not impact on the statutory right under section 2-708(1), common sense dictates that an affirmative act by the seller to resell should not have any impact on that right." (Footnote omitted.)). The comments to the resale remedy provision also acknowledge that the seller who resells does so for its own benefit, and not for the benefit of the breaching party as mitigation. *See* Legislative Comment 2 to ORS 72.7060 at 104 (noting that the seller resells "in his own behalf, for his own benefit and for the purpose of fixing his damages"); *cf.* ORS 72.7060(6) ("The seller is not accountable to the buyer for any profit made on any resale."). Therefore, the principle of mitigation does not appear to limit an aggrieved seller's recovery to resale price damages under ORS 72.7060; the seller may instead seek market price damages under ORS 72.7080(1).

In sum, when viewed in light of the bargained-for market risks and the UCC's rejection of the doctrine of election of remedies, the text, context, and legislative history of the sellers' remedy provisions demonstrate that an aggrieved seller can seek damages under either ORS 72.7080(1) or ORS 72.7060. That means that an aggrieved seller can seek damages under ORS 72.7080(1) even if the seller has resold the goods and market price damages exceed resale price damages.

Returning to the facts of this case, the trial court limited plaintiff's damages to resale price damages under ORS 72.7060. We have determined that plaintiff is entitled to market price damages under ORS 72.7080(1). Plaintiff asks us not to remand for calculation of those damages,

as the Court of Appeals did. *See Peace River*, 253 Or App at 717 (concluding that "the case must be remanded for a proper calculation of [plaintiff's] damages"). Instead, plaintiff argues that this court should remand with instructions to award plaintiff its market price damages as previously calculated. Plaintiff argues that the trial court made a specific finding accepting its calculation of those damages, and then improperly deducted certain resales from that amount. Because of that initial finding, plaintiff asserts that any additional calculation of its damages under ORS 72.7080(1) is unnecessary. Defendant responds that the trial court never made a finding accepting plaintiff's calculation of its damages under ORS 72.7080(1). Moreover, defendant notes, the record does not identify the amount that the trial court attributed to plaintiff's resales, which means that this court cannot simply work backwards from the trial court's award. Thus, defendant argues, this court must remand for calculation of plaintiff's market price damages.

As noted, after the trial court issued its initial letter opinion concluding that defendant had breached the contracts and directing plaintiff to calculate both its resale price damages and its market price damages, defendant filed a motion for reconsideration. Among other things, that motion challenged plaintiff's calculation of its market price damages. At the hearing on defendant's motion, defense counsel emphasized that plaintiff had the burden of proving its damages, and the trial court responded, "[T]hey have proven they have been damaged and they have proven in my opinion the numbers that they presented at trial. I'm just not sure whether they are entitled to all of that or something lesser based upon our discussion here."[10] Although the trial court appeared to accept plaintiff's calculation

---

[10] Earlier in the hearing, the trial court also stated that "the simplest and easiest thing for me to say would be to calculate [damages] [plaintiff's] way," but the court was not sure whether the market price remedy was the proper measure of damages. The court went on to state,

"[W]hat I'm saying to [defense counsel] is that I need him to tell me why that's not what I should do because, you know, the other side of it is that the argument could be—and—and this is a little bit where I am—that you [plaintiff] have proven your damages and you have given me evidence of that proof and you have given me a basis for that calculation. And so, based upon that, you have presented to me a *prima facie* case for your damages. Okay."

of market price damages, the court stated that it had not decided the amount of damages or how to determine those damages because, the court explained, "I am not absolutely one-hundred percent convinced what the measure is until I see completely how you each calculate your damages to some degree[.]"

Following that hearing, defendant submitted a calculation of plaintiff's resale price damages, and although plaintiff argued that that calculation was incorrect, plaintiff did not submit its own calculation of resale price damages. In the trial court's subsequent ruling awarding damages, the court acknowledged that it had "informed the parties at the close of evidence that a *prima facie* case for damages had been presented at trial," but the court noted that it had directed the parties to calculate the damages using the measure of damages directed by the court. Moreover, the court stated, "it could well be argued that Plaintiff has not in fact proved their damages," and the court went on to note that it "would have been within [its] discretion to have found Plaintiff did not adequately prove damages." Nonetheless, the court explained that it had given plaintiff time to provide a calculation of the measure of damages that accounted for resales. Because plaintiff did not do so, the court reasoned that it was "left with no option but to accept Defendant's calculation" using the resale price measure of damages.

The trial court did not award plaintiff its market price damages under ORS 72.7080(1), presumably because the court concluded that plaintiff was not entitled to that measure of damages—defendant's calculation of resale price damages was the "lesser of" the two calculations offered. Nonetheless, the trial court did state that plaintiff had proven its damages at trial. Even after defendant challenged plaintiff's market price damage calculation, the trial court concluded that plaintiff had presented a *prima facie* case for its market price damages. Moreover, although defendant suggests that the "record in this case does not permit this court to identify the amount the trial court attributed to [plaintiff's] resales," the amount that the trial court attributed to plaintiff's resales is irrelevant in determining plaintiff's market price damages because market

price damages and resale price damages are separate remedies. The trial court ordered that plaintiff be awarded "[t]he lesser of" its resale price damages *or* its market price damages. Thus, because we have concluded that plaintiff is entitled to recover its market price damages, on remand, the trial court should award plaintiff its market price damages as calculated in Exhibit 409.[11] The trial court also awarded plaintiff prejudgment interest on its damages. Defendant did not raise that issue in the Court of Appeals. Because we have concluded that the measure of damages awarded by the trial court was erroneous, on remand the trial court should calculate prejudgment interest on the damages set out in Exhibit 409 and include the appropriate sum in its judgment.[12]

## ATTORNEY FEES

The second issue on review is whether plaintiff is entitled to recover its attorney fees under the parties' contracts. In its initial ruling, the trial court noted that plaintiff could submit an application for attorney fees and costs under ORCP 68. In its subsequent ruling awarding damages, however, the trial court determined that plaintiff was not entitled to recover attorney fees. As relevant on review, the trial court ruled that the parties' contracts, which incorporated the NORAMSEED Rules—which we quote and discuss below—were ambiguous because the term "fees" in the NORAMSEED Rules had multiple possible meanings. The trial court resolved that ambiguity against plaintiff, reasoning that plaintiff was the drafter of the contracts. The Court of Appeals reversed, concluding that the trial court had construed a term that was not at issue in the case—the term "fees," rather than the disputed term "charges for collection"— and that the trial court had relied on an inapplicable maxim

---

[11] Defendant states in its brief that it has paid the judgment entered against it by the trial court. The parties can address on remand the appropriate amount of the award, taking into account amounts defendant already has paid.

[12] Because we conclude that plaintiff is entitled to recover damages under ORS 72.7080(1), we do not address the parties' discussion of lost volume sellers. *See* White, Summers and Hillman, 1 *Uniform Commercial Code* § 8:13 at 692, § 8:15 at 700 (explaining that a lost volume seller would have made a sale to the breaching buyer *and* to the party who purchased the goods after breach and noting that resale price damages are not a proper measure of damages for a lost volume seller).

of construction. *Peace River*, 253 Or App at 723-25. Applying the *Yogman* framework for contract interpretation, the Court of Appeals determined that the phrase "charges for collection" was ambiguous and remanded for the trial court to determine the intent of the parties. *Id.* at 724-25.

On review, defendant argues that the text and context of the contracts demonstrate that the phrase "charges for collection" does not include attorney fees. Even if this court concludes that that phrase is ambiguous, defendant argues, the record lacks clear evidence that the parties intended to allow for recovery of attorney fees. Alternatively, defendant argues that attorney fees can be recovered only if the contracts "expressly" authorize them, and defendant asserts that ambiguous contracts cannot expressly authorize attorney fees. Plaintiff responds that the phrase "charges for collection" is ambiguous, and that this court can resolve that ambiguity because the NORAMSEED Rules are a trade code that must be interpreted as a matter of law. Alternatively, plaintiff argues, the ambiguity can be resolved by applying ORS 42.260, which explains how to resolve contract ambiguities.

Generally, a party cannot recover attorney fees unless there is a statute or a contract that authorizes recovery of those fees. *Menasha Forest Products Corp. v. Curry County Title*, 350 Or 81, 88, 249 P3d 1265 (2011) (so stating). Because plaintiff seeks attorney fees under the parties' contracts, plaintiff must demonstrate that the contracts authorize recovery of those fees. *See Draper v. Mullennex et al*, 225 Or 267, 271, 357 P2d 519 (1960) ("If plaintiff is entitled to a judgment for attorney's fees against a defendant by reason of any special contract * * * then the right to such recovery should be particularly pleaded and proved."). As noted, plaintiff points to the phrase "charges for collection" in the NORAMSEED Rules, which the parties incorporated into their contracts, to support its claim that it is entitled to recover attorney fees. We interpret contract provisions using the framework described in *Yogman*, 325 Or 358. Under that framework, we begin by examining the "text of the disputed provision, in the context of the document as a whole," and if the provision is clear, the analysis ends. *Id.* at 361; *see also id.* (noting that whether a provision is ambiguous

is a question of law). A provision is ambiguous if it "'reasonably can, in context, be given more than one meaning.'" *Id.* at 363-64 (quoting *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 347-48, 876 P2d 761 (1994)).

Here, the disputed provision is in a rule titled "Payment," and it provides that "[t]he *charges for collection* of payment shall be for the Seller's account unless the Buyer does not pay in full and immediately when due, in which case they shall be for the Buyer's account." (Emphasis added.) The next paragraph of the rule explains, "If the Buyer does not pay within three working days of the due date of payment, or from the date on which he can legally do so, he shall pay the *charges for collection*[.]" (Emphasis added.) The phrase "charges for collection" is not a defined term in the rules or the contracts, and it does not appear anywhere else in the NORAMSEED Rules.

Although this court previously has looked to dictionary definitions when interpreting the text of a contract, *see, e.g.*, *Yogman*, 325 Or at 362-63, the UCC rejects that approach for commercial contracts. *See* Legislative Comment 1 to *former* ORS 71.2050 at 14 (1963), *amended and renumbered as* ORS 71.3030 (2009) ("The Uniform Commercial Code rejects * * * the 'lay-dictionary' * * * reading of a commercial agreement. Instead the meaning of the agreement of the parties is to be determined by the language used by them and by their action, read and interpreted in the light of commercial practices and other surrounding circumstances."); *see also* Legislative Comment 1(b) to ORS 72.2020 at 26-27 (noting that that section, which allows trade usage to explain or supplement a final written agreement, rejects "[t]he premise that the language used has the meaning attributable to such language by rules of construction existing in the law rather than the meaning which arises out of the commercial context in which it was used"). Instead, we must examine the text "in the light of commercial practices and other surrounding circumstances." Legislative Comment 1 to *former* ORS 71.2050 at 14 (1963).

Commercial practices include "usage of trade," which is defined as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to

justify an expectation that the practice or method will be observed with respect to the transaction in question." ORS 71.3030(3). We conclude that it is appropriate to consider any applicable trade usage at the first level of analysis under *Yogman*. *See also* Legislative Comment 1(c) to ORS 72.2020 at 27 (noting that that provision rejects "[t]he requirement that a condition precedent to the admissibility of the type of evidence specified in subsection (1) [including usage of trade] is an original determination by the court that the language used is ambiguous"); Legislative Comment 2 to ORS 72.2020 at 27 (stating that a commercial contract is to be read on the assumption that usages of trade "were taken for granted when the document was phrased" so that they became "an element of the meaning of the words used" if not carefully negated).

The existence and scope of a usage of trade, however, is a question of fact. ORS 71.3030(3) ("The existence and scope of the usage must be proved as fact."). Plaintiff nonetheless contends that the NORAMSEED Rules are a trade code that this court can construe as a matter of law. *See id.* ("If it is established that the usage is embodied in a trade code or similar record, the interpretation of the record is a question of law."). Even if we accept that argument, however, this court would need some evidence of what the "usage" was—here, the "existence and scope" of the asserted trade usage of the term "charges for collection." The trial court, however, did not make any findings about the meaning of that term, about any "trade usage" under the relevant NORAMSEED Rule, or about any other aspect of the commercial context of the contracts that relates to attorney fees. For that reason, on review we must determine whether there is any evidence in the record that would support a remand to the trial court to determine the relevant commercial context. *See Gill v. SAIF*, 314 Or 719, 724-25, 842 P2d 402 (1992) (declining to remand a case for further findings of fact on whether plaintiffs suffered any actual loss where the record "appear[ed] to be complete" and plaintiffs presented no evidence of actual loss).

Plaintiff points to testimony in the record to demonstrate the relevant usage of trade and commercial context

of the phrase "charges for collection." In particular, plaintiff's general manager at the time of the contracts testified that, after a dispute arose with defendant, he sent correspondence to the seed broker to forward to defendant that threatened to "commence with legal action for interest, legal fees and damages." Plaintiff's counsel then asked the general manager,

"Q: Now what was the basis for your claim for legal fees?

"A: Actually it's just the cost of collection.

"Q: Is it customary in Alberta and British Columbia that when you have to sue to collect money, you get to recover your attorney's fees?

"A: Yes, it is."

That exchange—and another similar exchange—is the only evidence plaintiff has identified in the record to show that the trade usage was that "charges for collection" included attorney fees.[13]

That evidence alone is insufficient to justify a remand for the trial court to determine the commercial context and usage of trade. The testimony of plaintiff's general manager is some evidence that, in a suit to collect money, the custom in parts of Canada is that the plaintiff can recover attorney fees. However, that testimony is not evidence of a regular practice or method of dealing in the grass seed trade.[14] Although a usage of trade can include a "practice or method of dealing having such regularity of observance in a *place*," plaintiff does not point to evidence to "justify an expectation that the practice or method [would] be observed with respect to the transaction in question," which

---

[13] In a later exchange, counsel asked the general manager about additional correspondence that he sent to the seed broker in which he again asserted that plaintiff would "pursue interest, storage, legal fees and damages." Counsel then asked, "Now when you say legal fees, are you also referring to that custom you told us about earlier?" The general manager answered, "That's right."

[14] Evidence of trade usage could have come from testimony by employees of plaintiff or others familiar with the purchase and sale of seed under the NORAMSEED Rules that persons in the trade understood the term "charges for collection" to include attorney fees or that the prevailing party in a contract dispute subject to those rules ordinarily could recover its attorney fees under that provision.

also involved an Oregon corporation, defendant. *See* ORS 71.3030(3) (defining "usage of trade"). Moreover, the Court of Appeals held that the contracts were to be interpreted applying Oregon law, *Peace River*, 253 Or App at 720, and neither party challenged that holding on review. The general manager's testimony is insufficient to justify a remand to the trial court on the issue of usage of trade, and because plaintiff does not identify other evidence in the record of usage of trade, we conclude that there is no evidence of usage of trade to support plaintiff's proposed interpretation of the phrase "charges for collection" to include attorney fees.

We turn to other provisions of the contract. *See Yogman*, 325 Or at 363 (examining other provisions of contract as part of analysis of text in context). As noted, the disputed provision appears in the NORAMSEED Rule entitled "Payment." That rule addresses the timing of payment, as well as the seller's options if the buyer does not pay. In particular, in addition to providing that the "charges for collection of payment" are for the buyer's account if the buyer does not pay in full and immediately when due, the rule also states, in a later paragraph, that the seller can recover "all damages, including expenses" if the buyer does not pay for the seed: "If the Buyer has not paid for the seed or not taken delivery upon arrival, or stated that he will not do so, he shall be liable for all damages, including expenses as well as loss of profit to the Seller."[15] The separate provisions covering "charges for collection of payment" and "damages, including expenses," suggest that charges for collection of payment are separate from the seller's effort to recover damages, which often would be the basis for a seller's claim for attorney fees. That is, as defendant notes, the part of the rule that discusses "charges for collection of payment" does not appear to contemplate litigation and, in turn, does not appear to contemplate recovery of attorney fees.

Even if we agreed with the Court of Appeals that the phrase "charges for collection" is capable of more than one interpretation, and could be construed to include attorney

---

[15] Plaintiff does not argue that the provision in the NORAMSEED Rules allowing a seller to recover "damages, *including expenses*" from a breaching buyer includes the right to recover attorney fees, and we do not address the issue.

fees, the evidence of the parties' intent adds little to our analysis of the text and context. *See Yogman*, 325 Or at 363 (noting that if a contractual provision is ambiguous after considering text and context, next step is to "examine extrinsic evidence of the contracting parties' intent"). As noted, the only evidence of the parties' intent identified by plaintiff— the testimony of the general manager—addressed the fact that a party seeking to recover money damages in Alberta and British Columbia customarily has a right to attorney fees, and even that testimony is ambiguous because it is unclear whether the general manager expected to recover attorney fees under the NORAMSEED Rules, which apply here, or under Canadian law, which does not apply here.[16] In any case, for the same reason that there is no evidence that supports a remand on the issue of usage of trade, no evidence supports a remand on the issue of the parties' intent.

In sum, plaintiff did not present evidence that the parties' contracts, through incorporation of the NORAMSEED Rule allowing a seller to recover "charges for collection of payment," provide for plaintiff to recover its attorney fees. That is, plaintiff did not demonstrate through text and context, including trade usage, or through evidence of the parties' intent, that the term "charges for collection" includes attorney fees.[17]

---

[16] Before the Court of Appeals, plaintiff argued that Alberta, Canada law applied and entitled it to recover its attorney fees. *Peace River*, 253 Or App at 717-18. As noted, the Court of Appeals determined that Oregon law governed the dispute regarding whether plaintiff was entitled to recover attorney fees, *id.* at 720, and plaintiff did not cross-petition on that issue. Thus, for purposes of review, Canadian law does not apply. Nonetheless, plaintiff argues that the law of a party's jurisdiction is relevant to determining a party's objective intent. Even if we accept that assertion, for which plaintiff cites no support, Canadian law would provide evidence of plaintiff's intent, but not of defendant's intent.

[17] Plaintiff argues that we should resolve any remaining ambiguity by applying ORS 42.260, which provides,

"When the terms of an agreement have been intended in a different sense by the parties, that sense is to prevail, against either party, in which the party supposed the other understood it. When different constructions of a provision are otherwise equally proper, that construction is to be taken which is most favorable to the party in whose favor the provision was made."

Plaintiff has not shown, however, either that defendant "supposed" that plaintiff understood the term "charges for collection" to include attorney fees or that plaintiff's construction of that term is "equally proper" in comparison to defendant's construction.

## CONCLUSION

For the reasons explained above, we conclude that plaintiff can recover its market price damages under ORS 72.7080(1). Because the trial court determined that plaintiff had proven its market price damages at trial, but later declined to award those damages for reasons that we have concluded were legally erroneous, plaintiff is entitled to recover market price damages in the amount calculated in plaintiff's Exhibit 409, together with prejudgment interest on that amount. However, we agree with the trial court, although for different reasons, that plaintiff is not entitled to recover its attorney fees under the NORAMSEED Rule that allows a seller to recover "charges for collection."

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court.